No. 25-4322

_____

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

————

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**MIGUEL ROLON,**

Defendant-Appellant.

————

Appeal from the
United States District Court
for the Southern District of California
Honorable Linda Lopez Presiding

————

**APPELLANT'S OPENING BRIEF**

————

Kara Hartzler
FEDERAL DEFENDERS OF
SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Attorneys for Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITES ...................................................................iii

INTRODUCTION .................................................................. 1

JURISDICTIONAL STATEMENT AND BAIL STATUS ..................... 2

ISSUES PRESENTED FOR REVIEW .................................................3

RELEVANT PROVISIONS ................................................................3

STATEMENT OF THE CASE ...........................................................5

I.  Mr. Rolon is arrested at the San Ysidro port of entry...................5

II.  At trial, the government seeks to admit testimony from Officer Medina about the meaning of the word "pollos."...............5

III.  The district court admits Officer Medina as an expert witness despite the government's noncompliance with Rule 16 and without making a *Daubert* finding. ...................................8

IV.  At closing argument, the government replays Mr. Rolon's "pollos" statement...................................................................... 10

SUMMARY OF THE ARGUMENT .................................................. 11

ARGUMENT .............................................................................. 13

I.  The district court failed to satisfy its *Daubert* gatekeeping role before admitting Officer Medina as an expert witness. .............. 13

    A.  Standard of review ......................................................... 13

    B.  The district court automatically abused its discretion by abdicating its *Daubert* "gatekeeping" role. ....................... 13

C.    Officer Medina's testimony was not reliable. ...................... 18

II.    The prosecutor did not provide sufficient expert notice under amended Rule 16. .................................................................... 23

    A.    Standard of review ........................................................ 23

    B.    The prosecutor did not provide expert notice sufficient to satisfy the new, higher standard of Rule 16. ................ 24

III.    The admission of Officer Medina's testimony caused Mr. Rolon prejudice. ................................................................................ 29

CONCLUSION ................................................................................. 33

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**                                                    **Page(s)**

*Arizona v. Fulminante,*
  499 U.S. 279 (1991) ...................................................................... 31

*City of Pomona v. SQM N. Am. Corp.,*
  866 F.3d 1060 (9th Cir. 2017) ...................................................... 15

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579 (1993) ................................................................. 11, 14

*Estate of Barabin v. AstenJohnson, Inc.,*
  740 F.3d 457 (9th Cir. 2014) (en banc) ......................... 14, 15, 16, 17

*United States v. Fort,*
  472 F.3d 1106 (9th Cir. 2007) ...................................................... 23

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ...................................................................... 27

*Primiano v. Cook,*
  598 F.3d 558 (9th Cir. 2010) ........................................................ 14

*Riegel v. Medtronic, Inc.,*
  451 F.3d 104 (2d Cir. 2006) ......................................................... 27

*United States v. Barnes,*
  713 F.3d 1200 (9th Cir. 2013) ...................................................... 31

*United States v. Burgos-Lopez,*
  No. CR-25-01394-001-PHX-SHD, 2026 WL 74487 (D. Ariz. Jan. 9,
  2026) ............................................................................................. 27

*United States v. Castro-Alavez,*
  __ F.4th __, 2026 WL 480002 (9th Cir. Feb. 20, 2026) ............ *passim*

*United States v. Davis,*
  No. CR 23-138 (RBW), 2025 WL 2799925
  (W.D. Pa. Sept. 30, 2025) ............................................................. 26

*United States v. Depue,*
 912 F.3d 1227 (9th Cir. 2019) (en banc) .................................... 13, 29

*United States v. Gonzalez-Flores,*
 418 F.3d 1093 (9th Cir. 2005) ................................................. 23, 29

*United States v. Hankey,*
 203 F.3d 1160 (9th Cir. 2000) ........................................................ 14

*United States v. Hinkson,*
 585 F.3d 1247 (9th Cir. 2009) (en banc) ......................................... 13

*United States v. Holguin,*
 51 F.4th 841 (9th Cir. 2022) .................................................... 15, 18

*United States v. Jawara,*
 474 F.3d 565 (9th Cir. 2007) .................................................... 15, 18

*United States v. Kwok,*
 No. 23-cr-118, 2024 WL 1773143 (S.D.N.Y. Apr. 24, 2024) ........... 27

*United States v. Menendez,*
 No. (S4) 23-CR-490 (SHS), 2025 WL 547794,
 (S.D.N.Y. Feb. 19, 2025) ................................................................27

*United States v. Michell,*
 65 F.4th 411 (9th Cir. 2023) ......................................................... 32

*United States v. Mitchell,*
 2013 WL 12202563 (W.D. Pa. Oct. 7, 2013) ................................... 28

*United States v. Mrabet,*
 703 F. Supp. 3d 442 (S.D.N.Y. 2023) ........................... 24, 26, 27, 28

*United States v. Olano,*
 507 U.S. 725 (1993) ...................................................................... 29

*United States v. Ruvalcaba-Garcia,*
 923 F.3d 1183 (9th Cir. 2019) ............................................ 15, 16, 18

*United States v. Tillisy,*
 697 F. App'x 910 (9th Cir. 2017) .................................................. 15

*United States v. Valencia-Lopez,*
  971 F.3d 891 (9th Cir. 2020) ................................................... *passim*

*United States v. Vaughan,*
  No. 4:22-CR-00162, 2025 WL 844363
  (E.D. Tex. Mar. 18, 2025) ...................................................... 24, 25

*United States v. Vera,*
  770 F.3d 1232 (9th Cir. 2014) ............................................ 20, 22, 23

*United States v. Williams,*
  435 F.3d 1148 (9th Cir. 2006) ...................................................... 31

*United States v. Williams,*
  974 F.3d 320 (3d Cir. 2020) ........................................................ 32

*United States v. Young,*
  571 F. App'x 558 (9th Cir. 2014) .................................................. 16

**Federal Statutes**

8 U.S.C. § 1324 ........................................................ 1, 2, 3, 5
18 U.S.C. § 371 .............................................................. 2, 5
18 U.S.C. § 3742 ............................................................... 2
28 U.S.C. § 3231 ............................................................... 2
28 U.S.C. § 1291 ............................................................... 2
28 U.S.C. § 1294 ............................................................... 2

**Rules**

Fed. R. App. P. 4(b) ........................................................... 3
Fed. R. Crim. P. 16 ..................................................... *passim*
Fed. R. Civil P. 26 ........................................................... 28
Fed. R. Evid. 702 ....................................................... *passim*

**Other**

*Murray v. S. Route Mar. SA, 870 F.3d*
  915, 925 (9th Cir. 2017).................................................... 15

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>MIGUEL ROLON,<br><br>Defendant-Appellant. | U.S.C.A. No. 25-4322<br><br>U.S.D.C. No. 24-CR-684-LL<br><br><br>**APPELLANT'S OPENING BRIEF** |

## INTRODUCTION

In March 2024, Miguel Rolon, a U.S. citizen, drove to a port of entry along the U.S./Mexico border with two young adults in his car. He handed a Border Patrol agent their documents, which showed that they were also U.S. citizens. But that agent sent the vehicle to secondary inspection, where further questioning revealed that the two passengers were actually undocumented. The government then charged Mr. Rolon with three counts related to human smuggling under 8 U.S.C. § 1324.

Mr. Rolon explained that he had no idea the passengers were undocumented because he had simply agreed to give a friend's son and daughter a ride back from Mexico. But the government alleged that Mr. Rolon was actually a co-conspirator in a scheme to smuggle them into the United States. So the jury's task at trial was to decide which version was true.

1

To promote their version, the government tried to admit a relatively inexperienced Border Patrol officer as an expert witness. In post-arrest calls Mr. Rolon made from jail, Mr. Rolon had referred to the passengers as "pollos." The district court allowed the Border Patrol officer to testify as an expert witness that "pollos" was a Spanish word used by smugglers to refer to the people they transport.

But the district court did not follow the proper procedures for admitting this expert testimony. It did not make the threshold determination of whether the witness's testimony was reliable. It did not require the witness to show any expertise about the language used by human smugglers. It did not even require the prosecutor to comply with the newly-amended rule for providing notice of expert witnesses. Due to these errors, and their critical effect on the outcome of the trial, this Court should remand for a new trial.

## JURISDICTIONAL STATEMENT AND BAIL STATUS

Mr. Rolon appeals his convictions for conspiracy and human smuggling under 18 U.S.C. § 371 and 8 U.S.C. § 1324 in the U.S. District Court for the Southern District of California. The district court had original subject matter jurisdiction under 28 U.S.C. § 3231.

This Court has jurisdiction over a timely appeal from a final order entered in the Southern District of California, within the Ninth Circuit's geographical jurisdiction. 28 U.S.C. §§ 1291 & 1294(1); 18 U.S.C. § 3742(a). The district court sentenced Mr. Rolon on July 7,

2025, and entered a final judgment on July 8, 2025. ER-21–22.

Mr. Rolon filed a timely notice of appeal on July 14, 2025. Fed. R. App. P. 4(b). ER-62.

Mr. Rolon is currently incarcerated at Victorville USP with a release date of November 23, 2026.

## ISSUES PRESENTED FOR REVIEW

**I.** **Whether the district court failed to satisfy its *Daubert* gatekeeping role before admitting Officer Medina as an expert witness.**

**II.** **Whether the prosecutor provided sufficient notice of Officer Medina's qualifications as an expert witness.**

## RELEVANT PROVISIONS

Section 1324(a)(2)(B)(ii) of Title 8 states:

Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs—

. . .

(B)   in the case of—

. . .

      (ii)   an offense done for the purpose of commercial advantage or private financial gain

3

be fined under title 18 and shall be imprisoned . . . not less than 3 nor more than 10 years[.]

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) states:

Contents of the Disclosure. The disclosure for each expert witness must contain:

- a complete statement of all opinions that the government will elicit from the witness in its case- in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

4

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

**STATEMENT OF THE CASE**

## I. Mr. Rolon is arrested at the San Ysidro port of entry.

In March 2024, Mr. Rolon drove himself and two young adults to the port of entry at San Ysidro, California. ER-58. Mr. Rolon would later explain that he believed they were the son and daughter of a friend of his and that both were U.S. citizens. ER-40. His friend said that the son and daughter had gone to Mexico to visit the dentist and asked Mr. Rolon if he could give them a ride back to the United States. ER-40. Mr. Rolon agreed.

But at the port of entry, the immigration agent referred the car to secondary inspection. ER-40. There, the two passengers admitted that they were not U.S. citizens. ER-40. The agents arrested Mr. Rolon and charged him with two counts of bringing a noncitizen to the United States for financial gain under 8 U.S.C. § 1324(a)(2)(B)(ii) and one count of conspiracy to do so under 18 U.S.C. § 371. ER-57–59. The case then proceeded to trial.

## II. At trial, the government seeks to admit testimony from Officer Medina about the meaning of the word "pollos."

The critical question at trial was whether Mr. Rolon knew the two passengers in his car were undocumented. According to Mr. Rolon, he was merely doing a favor for his friend by giving a ride to two people he

5

believed were U.S. citizens. ER-40. According to the government, Mr. Rolon had met the two individuals earlier, provided them with false identification documents, and coached them on what to say at the port of entry to gain access into the United States. ER-40–41. Thus, the question in the case was whether Mr. Rolon was a well-meaning friend who had been duped or a knowing participant in a smuggling scheme.

Prior to trial, the government gave notice that it would seek to admit Customs and Border Protection Officer Alexander Medina as an expert witness. ER 41–44, 60–61. Officer Medina was not present at the port of entry, had not questioned Mr. Rolon, and had no connection to the case. Although Officer Medina joined Border Patrol in 2017, he had just begun working in the Criminal Enforcement Unit the same month Mr. Rolon came to the port of entry. ER-61. He had authored no publications and appeared to have never testified as an expert witness. ER-60, 61. Nevertheless, the government sought to admit Officer Medina as an expert witness to testify about slang words used by human smugglers. ER-60.

The entirety of the government's written notice for Officer Medina to testify as an expert witness consisted of the following two paragraphs:

> The United States gives notice that it may elicit testimony from Customs and Border Protection Officer Alexander Medina regarding the term *"pollo"* in the context of alien smuggling. He is anticipated to opine that, based on his training and experience,

the term *"pollo"* is a term commonly used by alien smugglers to refer to smuggled aliens. This is relevant because we expect to elicit testimony from the jail-call custodian that three days following his arrest, Defendant made a jail call to his wife in which he stated that the "*pollos'* are talking.'" A month later, Defendant stated that the "*pollos'* are snitching on me." Officer Medina's explanation of the term will assist the jury to understand the evidence.

Included with this notice is Officer Medina's résumé, which sets forth his education and work experience. He has authored no publications in the previous 10 years. Although this may not be considered expert testimony, the United States gives notice of this testimony out of an abundance of caution.

ER-60.

Mr. Rolon objected. He first explained that the government's proffer was insufficient under Federal Rule of Evidence 702, which requires that an expert have specialized knowledge, base their testimony on sufficient facts and reliable methods, and reliably apply those methods to the facts. ER-35. He also pointed out that the amended Federal Rule of Criminal Procedure relating to expert witnesses requires that the government disclose a complete statement of the expert's "opinions, the bases and reasons for those opinions, and the witness's qualifications," which the government had failed to do for Officer Medina. ER-35 (quoting Fed. R. Crim. P. 16(a)(1)(G)). Finally, Mr. Rolon objected that the government had not "produced a list of other cases in which Officer Medina has testified in the last four years," as required by Fed. R. Crim. P. 16(a)(1)(G)(iii). ER-36. Because the

7

government's proffer contained "none of those required disclosures," Mr. Rolon maintained that the court should exclude Officer Medina's testimony. ER-36.

### III. The district court admits Officer Medina as an expert witness despite the government's noncompliance with Rule 16 and without making a *Daubert* finding.

At the motions in limine hearing the week before trial, the district court granted the government's motion to introduce expert testimony for "the reasons laid out in the briefing." ER-4–5. The court did not address the government's failure to comply with the mandatory requirements of Rule 16. ER-4–5. Instead, it simply limited the testimony to "whatever this witness has included in their Rule 16 disclosure" and reminded the government to "make sure that the witness testifies consistent with the Rule 16 disclosure and not out of the four corners." ER-4.

At trial, the government then called Officer Medina as a witness. ER-8. During voir dire, Officer Medina stated that he had been a Border Patrol agent since 2017 and received the standard five-and-a-half month training period for that position. ER-9. He had also been a member of the Criminal Enforcement Unit for about one year. ER-10. Officer Medina testified that he had participated in about sixty smuggling investigations, during which he claimed to have learned "common slang terms used by those who were involved in alien

8

smuggling along the southwest border." ER-11. Officer Medina testified that he was fluent in Spanish and had become familiar with the word "pollo" during his work as a Border Patrol agent. ER-13.

But Officer Medina did not claim to have received any training specific to human smuggling for any of the positions he had held. ER 9–10 (testifying that he received training on "customs, immigration, agriculture laws . . ., defensive tactics, interviewing, learning immigration visas," as well as how to "do interviews," "take evidence," and "process warrants"). Nor had he received training in language used by smugglers. ER-8–13. And though he claimed to have participated in about sixty smuggling investigations, he never said how many of these cases involved smugglers using the word "pollo." ER-8–13.

After voir dire, the following exchange then occurred:

| | |
|---|---|
| Prosecutor: | Your Honor, at this time the United States moves to qualify Officer Medina as an expert in the meaning of the word "pollos" in an alien smuggling context. |
| Court: | From the Defense? |
| Defense: | Your Honor, we'd stand on our former objections as to this matter. |
| Court: | Do you wish to explain? |
| Defense: | Not at this time, Your Honor. |
| Court: | All right. Thank you. So he will be admitted – tendered as an expert. |

9

ER-13. At no point did the district court make *Daubert* findings about whether Officer Medina's testimony was relevant and reliable.

Officer Medina then testified that the word "pollos" translates literally as "chickens" and that "in the context of alien smuggling" it refers to "undocumented people attempting to cross the international border." ER-14. At that point, the prosecutor played an audio clip of a phone call that Mr. Rolon made from jail after his arrest. ER-17. Officer Medina testified that on this call, Mr. Rolon stated that "[t]he pollos are snitching on me." ER-17.

## IV. At closing argument, the government replays Mr. Rolon's "pollos" statement.

At the close of evidence, the district court gave the jury the following instruction:

> You have heard from Customs and Border Protection Officer Alexander Medina, who testified about his opinions and the reasons for those opinions. This opinion testimony is allowed because of the specialized knowledge, skill, experience, training, or education of this witness.

ER-28.

During the government's closing argument, the prosecutor invited the jury to "consider the defendant's statement while in custody." ER-29. The prosecutor then replayed the audio clip of Mr. Rolon's jail call and told the jury:

10

The defendant said there two statements regarding *pollos*. "They're telling on me. The *pollos* are telling on me. The *pollos* are snitching on me."

You heard from Officer Medina that pollo is a common slang term used by alien smugglers to refer to the undocumented persons they transport. The defendant was using "pollo" for that exact reason. He did not say "Mel's kids." He did not say "Yonathan and Zulemy." He did not say "strangers." He said "*Pollos*." He was using that word for a reason, as you just heard.

ER-29 (emphases in transcript).

The jury then found Mr. Rolon guilty on all counts. ER-26. This appeal follows.

## SUMMARY OF THE ARGUMENT

The district court committed two errors relating to the government's admission of an expert witness, both of which went to the only contested issue at trial.

First, the district court failed to carry out its mandatory gatekeeping role under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). This Court has repeatedly found plain error when a judge fails to make threshold findings on whether an expert witness's testimony is "relevant" and "reliable." Such findings must be explicit and on the record. But here, the court made no such findings, either implicit or explicit. What's more, the officer's testimony was not reliable because he was relatively inexperienced, had no special training on language used by smugglers, and never explained the basis for his conclusion. Thus, the court erred in admitting this testimony.

11

Second, the district court failed to require the government to provide the necessary notice for an expert witness under the recently amended Federal Rule of Criminal Procedure 16(a)(1)(G)(iii). Specifically, the government failed to include "the bases and reasons" for the officer's conclusion, relying only on a generic reference to his "training and experience" that courts find wholly inadequate. Nor did the prosecutor include the mandatory disclosure of whether the officer had previously testified as an expert in the last four years. Given the prosecutor's failure to comply with Rule 16(a)(1)(G)(iii), the district court erred in admitting the officer's testimony.

The admission of the officer's testimony prejudiced Mr. Rolon for at least three reasons. First, it went to the heart of the case—whether Mr. Rolon knew his passengers were undocumented. Second, the officer's testimony transformed Mr. Rolon's statement into the equivalent of a confession, which will seldom be harmless. Finally, the prosecutor relied heavily on Officer Medina's testimony at closing argument when he replayed Mr. Rolon's jail call. For these reasons, this Court should remand for a new trial.

# ARGUMENT

## I. The district court failed to satisfy its *Daubert* gatekeeping role before admitting Officer Medina as an expert witness.

### A. Standard of review

This Court reviews the admission of expert testimony for an abuse of discretion. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc). Abuse of discretion involves an "objective two-part test." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). First, the Court must "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at 1262. Second, the Court must decide "whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.* at 1263.

Under the plain error standard, a defendant is not entitled to relief unless there has been (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc).

### B. The district court automatically abused its discretion by abdicating its *Daubert* "gatekeeping" role.

Over thirty years ago, the Supreme Court held that judges must play a "gatekeeping role" by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."

13

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). To establish the reliability of an expert's proposed testimony, courts look to four factors set forth in Federal Rules of Evidence 702[1] or the factors listed in *Daubert*[2] itself. *See id.* at 592–94. In applying these factors, courts are concerned "not [with] the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citations and quotations omitted).

While judges are not required to hold a separate *Daubert* hearing, it is black-letter law that a court automatically "abuse[s] its discretion by failing to make appropriate determinations under *Daubert* and Federal Rule of Evidence 702." *Estate of Barabin*, 740 F.3d at 464. In *Barabin*, for instance, the trial court never "assessed, or made findings regarding, the scientific validity or methodology" of the expert's proposed testimony, which was "the entire purpose of *Daubert*." *Id.* The

---

[1] Rule 702 states that an expert witness may testify if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

[2] *See United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir. 2000) (describing the *Daubert* factors as: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community") (citing *Daubert,* 509 U.S. at 592-94).

14

en banc Court held this was an abuse of discretion, explaining that "[j]ust as the district court cannot abdicate its role as gatekeeper, so too must it avoid delegating that role to the jury." *Id.*

What's more, "[r]eliability findings must be made 'explicit' on the record – an 'implicit' finding does not suffice." *United States v. Holguin*, 51 F.4th 841, 853 (9th Cir. 2022). *See also United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019) ("To satisfy its gatekeeping duty under *Daubert*, the court must make an explicit reliability finding.") (quotations and alterations omitted); *United States v. Valencia-Lopez*, 971 F.3d 891, 899 (9th Cir. 2020) (finding error when "the district court qualified Agent Hall as an expert without explicitly finding his proposed testimony reliable"); *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007) (holding that even where a court's ruling "suggests an implicit finding of reliability, the failure to make an explicit reliability finding [i]s error"). And where courts have failed to make an "explicit reliability finding," this Court has not hesitated to find an abuse of discretion.[3]

---

[3] *See Murray v. S. Route Mar. SA*, 870 F.3d 915, 925 (9th Cir. 2017) ("On many occasions, we have found an abuse of discretion when a district court completely abdicates its gatekeeping role.") (citing cases); *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017) (holding that under Barabin, a court's failure to make a reliability finding "constituted an abdication of the district court's gatekeeping role, and necessarily an abuse of discretion"); *United States v. Tillisy*, 697 F. App'x 910, 913 (9th Cir. 2017) ("The district court abused its discretion by admitting [expert] testimony without making

A very recent opinion illustrates this principle. In *United States v. Castro-Alavez*, __ F.4th __, 2026 WL 480002, at \*8 (9th Cir. Feb. 20, 2026), the government called a detective as an expert witness in a drug case to testify on drug trafficking methods and valuation. *Id.* But the government then proceeded to elicit testimony from the detective that drawings seized from the defendant's bag were "Mexican patron saints that drug traffickers pray to for protection, wealth, abundance, and silence." *Id.*

This Court first noted that the defense conceded it had forfeited any objection to this testimony "and thus plain error review applies." *Id.* Nevertheless, this Court reiterated the well-worn principle that courts "do not have discretion to abandon the gatekeeping function altogether." *Id.* (quoting *Ruvalcaba-Garcia,* 923 F.3d at 1189). And it found that the court committed plain error because it "neglected its gatekeeping role when it allowed Detective Moniz to testify about religious iconography purportedly associated with drug trafficking." *Id.*

Here, as in *Castro-Alavez*, the district court plainly "neglected its gatekeeping role." *Id.* at \*8. During voir dire, the prosecutor questioned

---

the requisite relevance and reliability findings."); *United States v. Young*, 571 F. App'x 558, 559 (9th Cir. 2014) ("As the district court did not make any determination on the record that the particular expert who testified in this case had used valid methods and would offer reliable testimony, it 'failed to assume its role as gatekeeper' under Rule 702 and *Daubert*.") (quoting *Barabin,* 740 F.3d at 463–64).

Officer Medina about his qualifications to testify as an expert. ER-8–13.

The following exchange then occurred:

| | |
|---|---|
| Prosecutor: | Your Honor, at this time the United States moves to qualify Officer Medina as an expert in the meaning of the word "pollos" in an alien smuggling context. |
| Court: | From the defense? |
| Defense: | Your Honor, we'd stand on our former objections as to this matter. |
| Court: | Do you wish to explain? |
| Defense: | Not at this time, Your Honor. |
| Court: | All right. Thank you. So he will be admitted – tendered as an expert. |

ER-13.

As this exchange shows, the district court never "assessed, or made findings regarding," the relevance or reliability of Officer Medina's proposed testimony." *Estate of Barabin*, 740 F.3d at 464. Rather, the court simply heard Officer Medina describe his purported qualifications, asked the defense whether they objected, and then admitted Officer Medina as an expert witness. ER-8–13. The court did not consider whether Officer Medina's qualifications rendered his testimony relevant and reliable to a material issue of fact, which is "the entire purpose of *Daubert.*" *Estate of Barabin*, 740 F.3d at 464.

17

Nor can the government argue that the district court did so implicitly. As explained, "[r]eliability findings must be made 'explicit' on the record – an 'implicit' finding does not suffice." *Holguin*, 51 F.4th at 853; *see also Ruvalcaba-Garcia*, 923 F.3d at 1190 (same); *Valencia-Lopez*, 971 F.3d 899 (same); *Jawara*, 474 F.3d at 583 (same). Here, there is no indication that the court's sole statement—that Officer Medina "will be admitted -- tendered as an expert"—is an implicit finding of relevance and reliability, but even if it were, this "does not suffice." *Holguin*, 51 F.4th at 853. So as in *Castro-Alavez* and similar cases, the trial court's abdication of the *Daubert* gatekeeping role was plain error. 2026 WL 480002, at *8.

## C.    Officer Medina's testimony was not reliable.

Because the district court abdicated its gatekeeping role, the next inquiry is whether Officer Medina's testimony *was* in fact "reliable."[4] This Court has acknowledged that *Daubert* "may be harder to apply when the expert testimony is 'experience-based' rather than 'science-based.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). But this does not make reliability an *easier* threshold to clear—rather, "reliability becomes *more*, not *less*, important when the 'experience-based' expert opinion is perhaps not subject to routine

---

[4] Mr. Rolon does not dispute that it was relevant.

testing, error rate, or peer review type analysis, like science-based expert testimony." *Id.* (emphases added).

Accordingly, this Court has held that a law enforcement officer's experience and knowledge alone is not sufficient to make a reliability finding. In *Valencia-Lopez*, for instance, this Court found that a government agent "had sufficient experience and knowledge to qualify as an expert" on drug trafficking. *Id.* But the Court nevertheless explained that "the record contains no evidence as to why that experience, by itself, equals reliability for his testimony" on a specific topic—namely, the likelihood that a drug cartel would coerce a person at gunpoint to carry drugs across the border. *Id.* at 898–99. The Court reiterated that "it is the government's burden to establish the reliability of the principles and methods employed to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant.*" *Id.* at 900 (quotations omitted). So while the agent may have had sufficient "knowledge and experience" regarding drug cartels to testify as an expert, that did not automatically translate into "a reliable basis" for testifying that drug cartels did not use coerced couriers. *Id.* at 901.

*Castro-Alavez* reached the same conclusion. There, this Court acknowledged that the detective's "twenty years of experience as a law enforcement officer" and investigation of "more than 300 narcotics-related cases" meant he had sufficient knowledge and experience to

19

qualify as an expert in drug valuation and drug trafficking methods. 2026 WL 480002 at *9. But the Court explained that "expertise, alone, does not qualify him to testify about every matter remotely related to drug trafficking." *Id.* After all, the detective's experience with religious iconography associated with drug trafficking was "limited to one four-hour class in 2010 and another in 2022." *Id.* The detective had "never investigated or researched the subject," nor had he "served as an expert on the subject before this case." *Id.* In fact, "[a]cross hundreds of investigations," the witness had only encountered such iconography one other time, and the government had "offer[ed] no other basis to support the reliability of [his] testimony." *Id.* Because "[t]hese qualifications fall short of Rule 702's demanding standard," the admission of his testimony "plainly contravened Federal Rule of Evidence 702." *Id.* at *8, *9.

This Court has reached the same conclusion in cases involving "coded language." In *United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014), this Court held that "[t]o interpret the meaning of coded language," an officer's training and experience in drug trafficking was "relevant but not alone sufficient to satisfy Federal Rule of Evidence 702." The Court explained that "[v]ague and generalized explanations are not sufficient; rather, the officer must explain how he *applies* his knowledge to interpret particular words and phrases used in particular conversations." *Id.* (quotations and alterations omitted).

20

These cases demonstrate that Officer Medina's testimony was not reliable, for at least three reasons. First, Officer Medina was comparatively inexperienced. For instance, the agent in *Valencia-Lopez* had nearly twenty years of experience in law enforcement and drug trafficking cases. *See* 971 F.3d at 896. The detective in *Castro-Alavez* also had "twenty years of experience" and had investigated "more than 300 narcotics-related cases." 2026 WL 480002 at *9. By contrast, Officer Medina only had seven years with Border Patrol and had investigated about 60 smuggling cases—about one third the number of years as the other experts and one fifth the number of cases as the detective in *Castro-Alavez*. ER-10–11. So Officer Medina had significantly *less* experience than experts who were found *not* to be reliable

Second, even if Officer Medina had sufficient experience to testify as an expert, that "expertise, alone, does not qualify him to testify about every matter remotely related to [human smuggling]." *Castro-Alavez,* 2026 WL 480002 at *9. Like the agent in *Valencia-Lopez,* "the record contains no evidence as to why [Officer Medina's] experience, by itself, equals reliability for his testimony" on the meaning of the word "pollos." 971 F.3d at 898–99. Like the detective in *Castro-Alavez,* Officer Medina had "never investigated or researched the subject" of slang terms used by human smugglers and had not previously "served as an expert on the subject." 2026 WL 480002 at *9. So even assuming that Officer Medina had sufficient experience on human smuggling to testify as an expert,

21

this alone did not qualify him to opine on the meaning of the word "pollos."

Third, Officer Medina never gave any explanation as to *why* or *how* his experience translated into his ultimate testimony about the meaning of the word "pollos." When it comes to interpreting slang or coded language, "[v]ague and generalized explanations are not sufficient; rather, the officer must explain how he *applies* his knowledge to interpret particular words and phrases used in particular conversations." *Vera*, 770 F.3d at 1241. Here, Officer Medina claimed that the word "pollo" was a "common slang term" in the smuggling world but never explained where he heard it, who said it, or how many times he had actually heard it used. ER-12–14. So it is possible that Officer Medina simply heard another Border Patrol agent use it once, which would not render his testimony "reliable" for purposes of Rule 702. *See Castro-Alavez,* 2026 WL 480002 at *9 (finding expert testimony unreliable when "the witness had only encountered such iconography one other time").

Importantly, the term "pollo" has many slang usages that do *not* relate to smuggling. For instance, it can refer to a person who is "unsophisticated" or "uneducated." *See* Urban Dictionary, *available at:* https://www.urbandictionary.com/define.php?term=Pollo. It can also refer to a young, attractive woman or man. *See* Green's Dictionary of Slang, *available at* https://greensdictofslang.com/entry/5v2ovoa;

22

Spanish Dictionary, *available at:*

https://www.spanishdict.com/translate/pollo. And it can refer to a person who is "easy to deceive or overly trusting," or "someone who acts foolishly." *See* Lingvanex, *available at*:

https://lingvanex.com/dictionary/meaning/spanish/pollo/. Because any of these terms could have conceivably described the passengers in Mr. Rolon's car, Officer Medina's "expert" opinion is not necessarily reliable.

As in *Vera, Valencia-Lopez,* and *Castro-Alavez*, Officer Medina's qualifications and testimony "fall short of Rule 702's demanding standard." *Castro-Alavez,* 2026 WL 480002 at *9. So as in those cases, "the district court erred by allowing him to testify on the subject." *Id.*

## II.    The prosecutor did not provide sufficient expert notice under amended Rule 16.

### A.    Standard of review

This Court reviews de novo a district court's interpretation of the Federal Rules of Criminal Procedure. *United States v. Fort*, 472 F.3d 1106, 1109 (9th Cir. 2007). Because Mr. Rolon objected to the government's failure to give proper notice under Rule 16, *see* ER-35–36, the government bears the burden to show that it is more probable than not that the error did not affect the verdict. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005).

23

**B.    The prosecutor did not provide expert notice sufficient to satisfy the new, higher standard of Rule 16.**

Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) "historically imposed limited, generalized criteria for noticing expert witness testimony" such as a "written summary" of the expert's conclusions. *United States v. Vaughan*, No. 4:22-CR-00162, 2025 WL 844363, at *2 (E.D. Tex. Mar. 18, 2025).[5]  But this version of the Rule proved to be "woefully inadequate." *United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023). In 2022, the Rule was thus amended to address "shortcomings of the prior provisions on expert witness disclosure"— particularly "the lack of adequate specificity regarding what information must be disclosed." Advisory Committee on Criminal Rules, Report of the Advisory Committee on Criminal Rules at 2 (June 1, 2021).[6]  The current version now reads:

> Contents of the Disclosure. The disclosure for each expert witness must contain:
>
> - a complete statement of all opinions that the government will elicit from the witness in its case- in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

---

[5]  Because circuit courts have had few opportunities to interpret the amended version of Rule 16(a)(1)(G)(iii), Mr. Rolon's argument relies largely on district court interpretations.

[6]  Available at: https://www.uscourts.gov/sites/default/files/criminal_rules_report_-_june_2021_0.pdf.

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. of Crim. P. 16(a)(1)(G)(iii).

The amended version of Rule 16(a)(1)(G)(iii) is "meant to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." Advisory Committee Report at 2. As one district court explained, expert notice must now state "what opinions the expert will give and the bases for those opinions, such that the notified party can discern what opinions the expert holds, why the expert holds those opinions, and how those opinions relate to the facts of the case." *United States v. Vaughan*, No. 4:22-CR-00162, 2025 WL 844363, at *2 (E.D. Tex. Mar. 18, 2025).

Here, the government's notice of its expert witness fell far short of the amended Rule. The expert notice consisted of two paragraphs, the first of which simply stated that Officer Medina was "anticipated to opine that, based on his training and experience, the term *'pollo'* is a term commonly used by alien smugglers to refer to smuggled aliens." ER-60. The second paragraph purported to establish Officer Medina's qualifications but simply made reference to "Officer Medina's résumé,

25

which sets forth his education and work experience. He has authored no publications in the previous 10 years." ER-60.

On its face, this failed to comply with the amended version of Rule 16(a)(1)(G)(iii). Even assuming that testimony about the meaning of the word "pollo" is a "complete statement of all opinions that the government will elicit," the notice does not provide "the bases and reasons" for this statement. Fed. R. Crim. P. 16(a)(1)(G)(iii). Rather, it says only that it is "based on his training and experience." ER-60. But Officer Medina never explained where he heard the word "pollo," who said it, how many times he heard it, and the context in which it was used. *See, e.g., United States v. Davis,* No. CR 23-138 (RBW), 2025 WL 2799925, at *3 (W.D. Pa. Sept. 30, 2025) (requiring expert to cite the "number of individuals" the opinion was based on). Thus, the prosecutor's notice did not provide the "bases and reasons" for believing that "pollos" is a common slang term used by human smugglers. Fed. R. Crim. P. 16(a)(1)(G)(iii).

In a case where the government similarly claimed that an expert would testify "based on his training and experience," the district court called this a "patent evasion of the Rule's requirements." *Mrabet*, 703 F. Supp. 3d at 444. The court explained that "'[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion.'" *Id.* (quoting

26

*Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)). Thus, "a statement of an opinion's bases and reasons cannot merely be 'the ipse dixit of the expert' from experience." *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also United States v. Menendez*, No. (S4) 23-CR-490 (SHS), 2025 WL 547794, at *4 (S.D.N.Y. Feb. 19, 2025) (same); *United States v. Kwok*, No. 23-cr-118, 2024 WL 1773143, at *1 (S.D.N.Y. Apr. 24, 2024) (same). As another judge explained when rejecting the government's "single, bare-boned, paragraph generically explaining [the expert's] conclusions," such notice provides only "a conclusion masquerading as reasoning." *United States v. Burgos-Lopez*, No. CR-25-01394-001-PHX-SHD, 2026 WL 74487, at *3 (D. Ariz. Jan. 9, 2026).

Here, as in these cases, the government's "bare-boned" notice simply cited Officer Medina's "training and experience" as the basis for his opinion, which is a "patent evasion of the Rule's requirements." *Id.; Mrabet*, 703 F. Supp. 3d at 444. Without "some explanation as to how [Officer Medina] came to his conclusion and what methodologies or evidence substantiate that conclusion," the government's notice was merely "the ipse dixit of the expert from experience." *Id.* Such notice is only "a conclusion masquerading as reasoning." *Burgos-Lopez*, 2026 WL 74487, at *3.

Additionally, the government failed to provide notice of the cases where Officer Medina had testified. Rule 16(a)(1)(G)(iii) requires the

27

expert notice to include "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." But here, the prosecutor's notice provided no such list. ER-60. And while the government may argue that this simply means Officer Medina had never testified as an expert before, the prosecutor expressly stated that he had "authored no publications in the previous 10 years." ER-60. So at a minimum, the prosecutor's failure to say the same about any prior appearances as an expert witness created confusion and violated Rule 16(a)(1)(G)(iii).

By amending Rule 16(a)(1)(G)(iii), the Advisory Committee intended to "largely mirror what has long been required in civil cases under Federal Rule of Civil Procedure 26." *Mrabet*, 703 F. Supp. 3d at 444. This allows courts to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Mitchell*, 2013 WL 12202563, at *1 (W.D. Pa. Oct. 7, 2013) (citing Fed. R. Crim. P. 16 advisory committee notes). Such benefits are "even more important in criminal cases," since civil litigants may depose their opponent's experts, while "criminal defendants have no such opportunity." *Mrabet*, 703 F. Supp. 3d at 444. Here, because the prosecutors' expert notice did not comply with the amended version of

28

Rule 16(a)(1)(G)(iii) and provide Mr. Rolon these benefits, the district court erred by permitting Officer Medina to testify.

### III. The admission of Officer Medina's testimony caused Mr. Rolon prejudice.

Although both errors in this case related to the admission of Officer Medina's testimony, their prejudicial effect is judged under two different standards. Should this Court hold that the prosecutor failed to provide sufficient notice under Rule 16(a)(1)(G)(iii), the government bears the burden to show that it is "more probable than not that the error did not materially affect the verdict." *Gonzalez-Flores*, 418 F.3d at 1099. Alternatively, should this Court only find that the district court abdicated its *Daubert* gatekeeping role, Mr. Rolon's failure to object means that he must satisfy the four prongs of plain error review. *See United States v. Olano*, 507 U.S. 725, 732 (1993); *Depue*, 912 F.3d at 1232. Because this Court has repeatedly held that failure to make explicit *Daubert* findings satisfies the first two prongs of "error" that is "plain," s*ee supra* at 14–18, Mr. Rolon would only bear the burden to show that the error "affected his substantial rights and seriously affected the fairness, integrity, or public reputation of the proceedings." *Olano*, 507 U.S. at 736.

But regardless of who bears the burden, the record here shows that the district court's error caused Mr. Rolon prejudice, for at least three reasons.

First, Officer Medina's testimony went to the heart of the case—whether Mr. Rolon knew that his passengers were undocumented. In *Valencia-Lopez*, this Court held that similarly unreliable expert testimony was not harmless because it "went right to the heart of the defendant's defense that he acted under duress." 971 F.3d at 902 (quotations omitted). While the government in *Valencia-Lopez* nonetheless characterized the defendant's version of events as "unbelievable and inconsistent with the evidence as a whole," this Court explained that "part of the reason it was arguably unbelievable was [the agent's] opinion, and part of the 'evidence as a whole' was that same opinion." *Id.*

Here too, even assuming that Mr. Rolon's claim of ignorance was "unbelievable and inconsistent" with the government's other evidence of guilt, "part of the reason it was arguably unbelievable was [Officer Medina's] opinion, and part of the 'evidence as a whole' was that same opinion." *Id.* Indeed, the district court specifically instructed the jury that Officer Medina was permitted to testify as an expert due to his "specialized knowledge, skill, experience, training, [and] education," which almost certainly carried significant weight with the jury. ER-28. Because Officer Medina's testimony carried the imprimatur of an "expert" and "went to the heart of the most important issue in the case," it was not harmless. *Id.* (quotations omitted).

30

Second, Mr. Rolon's statement was the equivalent of a confession. This Court and the Supreme Court have recognized that a "'confession is like no other evidence.'" *United States v. Barnes*, 713 F.3d 1200, 1207 (9th Cir. 2013) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)). In fact, "'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.'" *Id.* And a defendant's confession "will seldom be harmless." *United States v. Williams*, 435 F.3d 1148, 1162 (9th Cir. 2006). That is particularly true where, as here, the confession goes "to the heart of the case." *Barnes*, 713 F.3d at 1207. Because Officer Medina's testimony about the meaning of the word "pollos" transformed Mr. Rolon's own words into an effective confession of participation in the smuggling scheme, it was "the most probative and damaging evidence that [could have been] admitted against him." *Barnes*, 713 F.3d at 1207.

Finally, the prosecutor relied heavily on Officer Medina's testimony at closing argument. The prosecutor specifically invited the jury to "consider [Mr. Rolon's] statement while in custody" and then replayed the audio recording of the "pollos" statement. ER-29. He then reminded the jurors of Officer Medina's testimony that "pollo is a common slang term used by alien smugglers" and told them that Mr. Rolon was using the word "for that exact reason." ER-29. The prosecutor reiterated that Mr. Rolon did not refer to the individuals by their names or as "Mel's kids" and then said again, "[h]e was using that

31

word for a reason." ER-29. Because the government "emphasized [Officer Medina's testimony] in its closing," *Valencia-Lopez,* 971 F.3d at 902, its admission was not harmless.

Because the admission of Officer Medina's testimony caused Mr. Rolon prejudice, the government will not be able to show that this error was harmless for purposes of the Rule 16 issue. As to the issue of the district court's failure to satisfy its *Daubert* gatekeeping role, this prejudice also satisfies the third prong of plain error because it shows a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Michell*, 65 F.4th 411, 414 (9th Cir. 2023) (quotations omitted). Finally, Mr. Rolon also satisfies the fourth prong of plain error review because a reasonable citizen would "bear a rightly diminished view of the judicial process and its integrity if the error were allowed to stand." *United States v. Williams*, 974 F.3d 320, 344, 345 (3d Cir. 2020). Admitting Officer Medina as an "expert" when he 1) had significantly less experience than similar law enforcement witnesses, 2) had never before testified as an expert, and 3) had "never investigated or researched" the topic creates a "rightly diminished view of the judicial process" and its reliance on expert witnesses. *Id.* Accordingly, Mr. Rolon satisfies all four prongs of plain error review.

## CONCLUSION

Because the district court committed two errors that went directly to the only contested element at trial, this Court should vacate Mr. Rolon' conviction and remand for a new trial.

Respectfully submitted,

DATED:    March 4, 2026

*/s/ Kara Hartzler*
KARA HARTZLER
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234.8467

Attorneys for Defendant-Appellant

33

## CERTIFICATE OF RELATED CASES

Counsel is not aware of any related cases pending before the

Court.

Respectfully submitted,

DATED:    March 4, 2026

*/s/ Kara Hartzler*

KARA HARTZLER
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California   92101-5030
Telephone: (619) 234.8467

Attorneys for Defendant-Appellant

34

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-4322

I am the attorney or self-represented party.

**This brief contains** 7,322 **words, including** | |words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Kara Hartzler **Date** 3/4/26
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*