No. 25-4322

# United States Court of Appeals

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE

*v.*

MIGUEL ROLON,

DEFENDANT-APPELLANT

*On Appeal from the United States District Court for the Southern District of California*
*24CR0684-LL*

**SUPPLEMENTAL EXCERPTS OF RECORD VOLUME 2 OF 2**

ADAM GORDON
  *United States Attorney*

DANIEL E. ZIPP
  *Assistant U.S. Attorney*
  *Chief, Appellate Section*
  *Criminal Division*

  *880 Front St., Rm. 6293*
  *San Diego, CA 92101*
  *(619) 546-8463*

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 2 of 122
Case 3:24-cr-00684-LL    Document 158    Filed 08/25/25    PageID.1172    Page 192 of 207

CORRALES   |   CROSS-EXAMINATION   |   BUGARIN        192

times.

Q   In this report, that's what that says?

A   Correct.

        MR. BUGARIN:   Okay.   Can we take that down?

BY MR. BUGARIN:

Q   Officer Corrales, you took inventory of Mr. Rolon's belongings after his arrest?

A   That is correct.

Q   And you have to fill out documents to kind of record what's been seized and what's been put into inventory?

A   Correct.

Q   Okay.  One of them includes a form that describes any currency that was seized from the people that were arrested?

A   That's correct.

Q   Okay.  And you had Mr. Rolon sign a document outlining the amount of money that was confiscated in this case?

A   I believe, I have them initial.

Q   Initial, yes.

A   Correct.  Yes.

Q   Okay.  And that's standard practice?

A   Correct.  Yes.

Q   Okay.  On the night -- on the morning of the arrest, Mr. Rolon had no money on him?

A   Correct.  He had zero cash on him.

Q   Okay.  Officer Corrales, you remanded Mr. Rolon to the

Metropolitan Correctional Center, right?

A    That is correct.

Q    Okay.  Officer Corrales, I want to just bring us back to that registration for the Honda Civic?

A    Okay.

Q    So there were two people that the car was registered to, right?

A    That is correct.

Q    One of them was Yenifer Posadas?

A    Correct.

Q    And the other was Oscar Guillen?

A    Correct.

Q    Okay.  You didn't speak to him regarding this case?

A    He was not available.

Q    So you didn't speak to him regarding this case?

A    That is correct.

Q    You didn't call him?

A    There was no number available.

Q    So you didn't call him?

A    That's correct.  I did not.

Q    You didn't interview him?

A    He was not available.

Q    Like I said, you didn't interview him?

A    No, I did not.

Q    Okay.  Officer Corrales, as part of your investigation, you

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 4 of 122
Case 3:24-cr-00684-LL    Document 158    Filed 08/25/25    PageID.1174    Page 194 of 207

CORRALES   |   CROSS-EXAMINATION   |   BUGARIN          194

learned that one of the material witnesses, Ms. Raquec-Mucia, was in contact with a person named "Maynor Sir"?

A   That's correct.

Q   There's conversation between Maynor Sir and Ms. Raquec on her phone?

A   That's correct.

Q   She texted Maynor Sir after her arrest?

A   Correct.  Or during the arrest.  I don't recall the exact --

Q   While she was in custody?

A   Correct.  Or being transferred to Secondary.

Q   While she was in your custody or in the custody of Homeland Security?

A   During investigation, correct --

Q   She texted Maynor Sir --

(Court Reporter interruption.)

THE COURT:  One at a time.

MR. BUGARIN:  I apologize.

BY MR. BUGARIN:

Q   You said "correct," right?

A   Correct.  Yes.

Q   Okay.  So while she was in custody, she texted Maynor Sir to text Mr. Posadas?

A   That's correct.

Q   And she told Maynor to tell Mr. Posadas that they were

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 5 of 122
Case 3:24-cr-00684-LL   Document 158   Filed 08/25/25   PageID.1175   Page 195 of 207

CORRALES   |   CROSS-EXAMINATION   |   BUGARIN   Page 195 of   195

arrested?

A    I believe she said, "Tell Mel that we were arrested."

Q    Yeah, same person?

A    Correct.

Q    Okay.  You didn't speak to a Maynor Sir regarding this case?

A    I'm unable to locate him until this time [sic].

Q    So you hadn't spoken to a Maynor Sir?

A    I've been trying to find him.  I can't find him.

Q    So that's a "no"?

A    That's a "no."

Q    Okay.  You didn't call a Maynor Sir regarding this case?

A    I can't track him, no.

Q    So that's a "no"?

A    That's correct.

Q    Okay.  You didn't interview a Maynor Sir?

A    Again, I can't locate him, so I can't interview.

Q    So that would be a "no"?

A    Correct.

Q    Okay.  Officer Corrales, you interviewed Mr. Rolon after his arrest?

A    That is correct.

Q    Okay.  And in these types of cases, it's typical to look through a person's phone for evidence as part of an investigation?

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 6 of 122
Case 3:24-cr-00684-LL   Document 158   Filed 08/25/25   PageID.1176   Page 196 of 207

CORRALES | CROSS-EXAMINATION | BUGARIN 196

A   Correct.  If it's a criminal case, then we take the time to do that, yes.

Q   Right.  And you either get access to someone's phone with their consent or through a warrant?

A   Usually, yes.  That's how it works.

Q   Okay.  And Mr. Rolon, in this case, he consented to a search of his phone?

A   That's correct.

Q   And he even offered to show you -- show the officer -- show you and Officer Acevedo Mr. Posadas's contact number?

A   That's correct.

Q   Which he did at the end of your interview?

A   Correct.

Q   Okay.  Officer Corrales, you're responsible for knowing the whereabouts of the material witnesses as the case agent?

A   That is correct.  And we also have a material witness [sic] that's in charge of that.  So he's the one -- we have a material witness coordinator that helps with that.

Q   But you are also in charge of that as well, right?

A   If something arises, yes.  They'll usually call me and let me know.

Q   Okay.  So it's part of your duty to make sure that they appear in court?

A   That is correct.

Q   And you ran a query at the CBP database for

Ms. Raquec-Mucia on April 7th, 2025?

A   Can you repeat the question?  Sorry.

Q   You ran a query -- you ran a hit for Ms. Mucia under a CBP database on April 7th, 2025?

A   I believe I ran a TECS query, yes.

Q   Okay.  That was two days ago?

A   Correct.

Q   Okay.  And you notified the prosecutors here that Ms. Mucia was released into the United States?

A   Correct.  At the time -- I misspoke.  I'm sorry.  It wasn't a TECS query.  It was a ERMS.  It's a removal proceedings, their immigration system.

Q   Okay.  You ran that query two days ago?

A   That is correct.  Just to confirm they weren't rearrested again, or they can't try to come in -- back into the country.

Q   And you --

A   Just following up.

Q   So that's a "yes"?

A   That's correct.  Yes.

Q   Okay.  I just want to keep it tight, "yes" or "no"?

A   Correct.  I just want to be thorough.

Q   I understand.  I understand.  So you notified the prosecutors in this case that Ms. Raquec was released into the United States on April 7th?

A   I --

**SER-305**

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 8 of 122
Case 3:24-cr-00684-LL    Document 158    Filed 08/25/25    PageID.1178    Page 198 of 207

CORRALES | REDIRECT | FAWCETT                                    198

Q    Notified --

(Court Reporter interruption.)

MR. BUGARIN:  I'm sorry.  I'm sorry.  Can I repeat my question?

BY MR. BUGARIN:

Q    On April 7th, you notified the prosecutors on this -- in this case that Ms. Raquec was released into the United States?

A    That's correct.

Q    Thank you.  So before April 7th -- as in Monday -- you didn't know that she was in the U.S.?

A    Correct.

MR. BUGARIN:  Okay.  No further questions.

THE COURT:  Thank you.

Any redirect?

MR. FAWCETT:  Yes, Your Honor.

REDIRECT EXAMINATION

BY MR. FAWCETT:

Q    Sir, Mr. Posadas was not arrested on March 11th, 2024; is that correct?

A    That's correct.

Q    By the time that you had learned that Mr. Posadas had been in the car with Defendant, Mr. Rolon, and with the two material witnesses, had he already been -- had he already entered the United States?

A    Yes.  At the time that I discovered there was a plan made

**SER-306**

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 9 of 122
Case 3:24-cr-00684-LL    Document 158    Filed 08/25/25    PageID.1179    Page 199 of

CORRALES | REDIRECT | FAWCETT
207
199

for -- and he was involved -- all parties were involved -- he already had made it into the United States.

Q    Your investigation including the -- included the investigation of Mr. Posadas; is that correct?

A    That's correct.

Q    And he was arrested on a later date; is that correct?

A    That's correct.  He was.

Q    The Defense showed you Defense Exhibit E7.

        MR. FAWCETT:  Is it possible to bring that up?  Thank you.  Which, I believe, has been admitted into evidence.  Thank you.

BY MR. FAWCETT:

Q    You testified earlier -- did you testify earlier that this was a photo that you encountered during the course of your investigation?

A    That's correct.  Yes.

Q    And that you recognize this to be Melquides Palafox Posadas in the driver's seat?

A    That's correct, yes.

Q    Where did you get this photograph?

A    I got this photograph from our material witness.

Q    Which material witness?

A    This one was from Zulemy -- Zulemy Yohana Raquec-Mucia.

Q    Okay.  And you said you got it from her.  How did you get it from her?

A    So part of my investigation, I try to gather all the facts, and I obtained this from a search warrant from her phone.  And it was -- I pretty much grabbed her phone and we started just checking for any evidence or any facts that might assist the case.

Q    So is this a picture of the phone that you searched that belonged to Zulemy?

A    That's correct, yes.

Q    Were there any other pictures that you recovered from that phone?

A    There was plenty of pictures from that phone.

Q    I'd like to show -- just you -- what's been previously marked as Government's Exhibit 14.

     MR. FAWCETT:  I would request the Court if we can switch to our system?  Thank you.

BY MR. FAWCETT:

Q    Do you recognize this photograph?

A    Yes, I do.

Q    What does this depict?

A    That's also a picture as well of the inside of the Honda Civic -- 2004 Honda Civic -- of the same.

Q    And where would this picture come from?

A    This picture came from our material witness, Ms. Zulemy.

Q    Was it from her phone?

A    It was from her phone, yes.

**SER-308**

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 11 of 122
Case 3:24-cr-00684-LL    Document 158    Filed 08/25/25    PageID.1181    Page 201 of 201

CORRALES | REDIRECT | FAWCETT

201

207

Q    Was it from the same phone that Defense Exhibit E7 came from?

A    **Excuse me?**

Q    Was it from the same phone that the Defense Exhibit E7 -- that last picture we showed you -- that that came from?

A    **That's correct, yes.**

Q    And I'd like to show -- just to you -- Government's Exhibit 15 what's been previously marked as such.

Is this a photograph of the same phone?

A    **That's correct.**

Q    And is this a different picture from the phone?

A    **That is a different picture from that phone, yes.**

Q    And what does this picture appear to show?

A    **So this picture is out of the windshield from the vehicle displaying the San Ysidro Port of Entry looking from Mexico into the United States; north, pretty much, into the United States.**

Q    Are Government Exhibit 14 and 15 both true and accurate depictions of the information or the photographs that you took from that material witness's phone during this investigation?

A    **Yes, it is.**

        *MR. FAWCETT:*  Your Honor, at this time I'd move to admit Government's 14 and 15 as well.

        *MR. BUGARIN:*  No objection, your Honor.

        *THE COURT:*  Thank you.

That's 14 and 15, correct?  Yes.  They can be admitted -- or they are admitted.

**(Government Exhibits 14 and 15 received into evidence.)**

**MR. FAWCETT:**  Thank you.

**(Government Counsel confers.)**

**MR. FAWCETT:**  No further questions, Your Honor.

**THE COURT:**  Any recross?

**MR. BUGARIN:**  No, Your Honor.

**THE COURT:**  All right.  Thank you.

Is this witness excused?

**MR. BUGARIN:**  Yes, Your Honor.

**MR. FAWCETT:**  Yes, Your Honor.

**THE COURT:**  All right.  Thank you.

Thank you for your testimony.

The Government may call their next witness.

**MR. BESHAR:**  Thank you, Your Honor.  The United States rests.

**THE COURT:**  Thank you.

And the Defense?

**MR. GARRISON:**  Motion, Your Honor?

**THE COURT:**  Yes, I will reserve.  All right.

And at this time, does the Defense wish to call any witnesses?

**MR. GARRISON:**  One second, Your Honor.

**THE COURT:**  Of course.

(Defense Counsel confers.)

MR. GARRISON:  The Defense rests, Your Honor.

THE COURT:  All right.  Thank you very much.

I'm assuming no rebuttal?

MR. FAWCETT:  Correct, Your Honor.

THE COURT:  All right.  Thank you.

Members of the jury, this is all of the evidence that you're going to receive in this case.  The next phase of the case will be that I provide jury instructions to you and the lawyers provide their closing arguments.

In light of the time, which is 4:12, I will not have ample time to provide all of the jury instructions to you and have them photocopied.  I will provide a set of the jury instructions -- one for each of you -- to take into the deliberation room.  So when that happens tomorrow morning -- and I'm providing a lot of information -- don't get overwhelmed, you'll have a copy of these instructions for each of you to be able to work off of.  And so after closing arguments, you will have the trial -- you will have the case, and you'll be able to begin your deliberations.

I'm guessing we can -- come back at 9:00 again tomorrow, that way we can start early and you can begin your deliberations.

Rhea, there will be lunch sent tomorrow, right?

THE CLERK:  Do you want lunch, yes?

THE COURT:  Yes.

So when you come in the morning, rather than pastries and coffee when you come in the morning, Rhea will take your lunch order.  Because based on my calculations, the time it will take for jury instructions and for closing arguments, by the time you're ready for the case, it'll be close to lunchtime.  And that way you can have food, you can eat as you are deliberating.

Please remember do not discuss this case with anyone. Do not talk about it, read anything about it, or begin your deliberations even though the testimony has closed.  I still have not provided you the instructions that you need to utilize when you conduct your deliberations.

Leave your notebooks on your chair.  Take all of your belongings, and I will see everyone back here tomorrow at 9:00 a.m.

**(Jury exits the courtroom at 4:13 p.m.)**

**(Proceedings heard outside the presence of the jury.)**

THE COURT:  And Counsel, you may be seated.

**(Pause.)**

THE COURT:  All right.  I have received the jury instructions.  I have not had an opportunity to review them.  I know initially they were sent separately, and then we received them together.  I don't believe that there is a tremendous amount of disagreement, but I know that there are some that I

do need to rule on.  So I'm going to ask Counsel to be here at 8:45.  I think that'll give us enough time to have whatever discussion we need to have.

I will have -- once we talk about what everyone is requesting and we finalize that, what I'll do is I'll make sure that we put it in the order that I think is best.  I'll make sure lawyers can look at it.  And we'll be ready start with the jury coming back into the courtroom at 9:00.

Ricky, give me one moment.

I might ask you to come in at 8:30 instead.  Give me one second.

(Pause.)

THE COURT:  All right.  So I am going to have Counsel come at 8:30.  I do have a question regarding the deposition of the material witness who did not appear.

What is the Government's position with respect to that?

MR. FAWCETT:  We -- we're not moving to play that.  We didn't ask for it to be played because --

THE COURT:  Very well.  I suspected that, but I just wanted to not assume something.

So with respect to any jury instructions that deal with an unavailable witness or the deposition, I am not going to spend my time -- and you shouldn't spend your time -- working on those.  In light of that, we can meet here at 8:45.

I think we'll have plenty of time to get anything resolved by then.

  **MR. FAWCETT:**  Thank you, you Honor.

  **MR. GARRISON:**  Your Honor, two housekeeping matters. On the Rule 29, did you want to take that under submission?

  **THE COURT:**  Yes.

  **MR. GARRISON:**  And secondly, may we please submit a proposed instruction regarding alien smuggling organization and a proposed instruction -- theory of defense instruction?

  **THE COURT:**  You may, and make sure you send it to the Government as well.

  **MR. GARRISON:**  Okay.  Will do.  Thank you.

  **THE COURT:**  Okay.  Perfect.

  And before you all leave, I like to do this because especially in cases where I believe the lawyers have worked well together.  Good job.  Thank you very much.  Good job.

  And, sir, good luck to you.  Your lawyers have done good work for you.  And I also want to extend a big thanks to the Government by working, taking your witnesses out of order to allow accommodations for Ms. Philips.  I know that that was important.  I appreciate that.  Thank you.

  **THE CLERK:**  The Court is now in recess.

  **(Recess taken at 4:18 p.m.)**

       \* \* \* \*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE LINDA LOPEZ

UNITED STATES DISTRICT JUDGE

```
                                   )
UNITED STATES OF AMERICA,          )
                                   ) Case No. 24-CR-00684-LL
                  Plaintiff,       )
                                   ) Thursday, April 10, 2025
        v.                         )
                                   )
MIGUEL ROLON,                      )
                                   )
                  Defendant.       )
                                   ) San Diego, California
```

REPORTER'S TRANSCRIPT OF JURY TRIAL DAY 3

PAGES 3 THROUGH 80

APPEARANCES:

For Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
                  880 Front Street, Suite 6293
                  San Diego, California  92101-8807
                  BY:  HENRY F. B. BESHAR, AUSA
                  and  DAVID EUGENE FAWCETT, AUSA.

For Defendant:    FEDERAL DEFENDERS OF SAN DIEGO
                  225 Broadway, Suite 900
                  San Diego, California  92101-5030
                  BY:  JULIAN ANDREE BUGARIN, ESQ.
                  and  TIMOTHY ROBERT GARRISON, ESQ.

Reported By:  Jessica Borynack, RPR, CSR No. 14779
District Court Clerk's Office
333 West Broadway, Suite 420
San Diego, California  92101-3806
(Reported stenographically; transcribed via computer)

SER-315

<u>I  N  D  E  X</u>

| | <u>Page</u> |
|---|---|
| Government Closing Arguement | 34 |
| Defense Closing Argument | 54 |
| Government Rebuttal Argument | 66 |
| Verdict | 76 |

**SER-316**

don't know if the Defense has seen the verdict form, if there's any opposition to the verdict form.  But take a look at it.

THE CLERK:  Okay.  Court will be in recess.

**(A recess was taken from 9:19 a.m. to 9:43 a.m.)**

**(Proceedings heard outside the presence of the jury.)**

THE CLERK:  Please remain seated and come to order.

THE COURT:  We're going to pass over -- we're going to hand you the way I made the changes to the theory of defense, and then we can bring the jury in.  All good?

MR. GARRISON:  Yes, Your Honor.

MR. FAWCETT:  Yes, Your Honor.

THE COURT:  All right.  Thank you.

Let's bring the jury in.

**(Jury enters the courtroom at 9:45 a.m.)**

THE COURT:  Good morning, everyone.  Welcome back.  I hope everyone had a nice evening.  Sorry for the delay this morning.  The lawyers and I were working on the jury instructions that are going to be sent back with you after closing arguments this morning.

By a show of hands, did anyone read anything about this case, hear anything about it, discuss it with anyone, do any research, any of the things that we asked you not to do? Perfect.  Seeing no hands.  Thank you.

Everyone may be seated.  Thank you.

**JURY INSTRUCTIONS**

THE COURT: All right. So as I indicated, at some point during this trial, I'm going to give you a lot of instructions. You are welcome to take notes. You don't have to because this is going to be sent back, a set for each of you that you'll have in the jury room.

So you have heard testimony that the defendant made a statement. It is for you to decide, one, whether the defendant made the statement; and two, if so how much weight to give it. In making those decisions, you should consider all the evidence about the statement, including the circumstances under which the defendant may have made it.

You have heard from Customs and Border Protection Officer Alexander Medina, who testified about his opinions and the reasons for those opinions. This opinion testimony is allowed because of the specialized knowledge, skill, experience, training, or education of this witness. Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's knowledge, skill, experience, training, or education, the reasons given for the opinion, and all of the other evidence in this case.

A defendant may be found guilty of bringing aliens to the United States for financial gain even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To aid and abet

means intentionally to help someone else commit a crime.

To prove a defendant guilty of bringing in aliens for financial gain by aiding and abetting, the Government must prove each of the following beyond a reasonable doubt:

First, someone else committed bringing aliens to the United States for financial gain;

Second, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of bringing aliens to the United States for financial gain;

Third, the defendant acted with the intent to facilitate bringing aliens to the United States for financial gain;

And fourth, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime or unknowingly and unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit bringing aliens to the United States for financial gain.

A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime. The Government is

not required to prove precisely which Defendant actually committed the crime and which Defendant aided and abetted.

The Indictment is not evidence. The defendant has pled not guilty to the charges. The defendant is presumed to be innocent unless the Government proves the defendant guilty beyond a reasonable doubt.

In addition, the defendant does not have to testify or present any evidence to prove innocence. The defendant does not have to prove innocence. The Government has the burden of proving every element of the charges beyond a reasonable doubt.

A defendant in a criminal case has a constitutional right not to testify. In arriving at your verdict, the law prohibits you from considering in any manner that the defendant did not testify.

In deciding the facts of this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it. In considering the testimony of any witness, you may take into account the following:

First, the opportunity and ability of the witness to see or hear or know things testified to;

Second, the witness's memory;

Third, the witness's manner while testifying;

Fourth, the witness's interest in the outcome of the case, if any;

SER-320

Fifth, the witness's bias or prejudice, if any;

Sixth, whether other evidence contradicted the witness's testimony;

Seventh, the reasonableness of the witness's testimony in light of all of the evidence;

And eighth, any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same events but remember it differently.  You may consider these differences, but do not decide the testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part that you think is true and ignore the rest.

You must avoid bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

The weight of the evidence as to a fact does not necessarily depend on the number of witness who testify. What is important is how believable the witnesses were and how much weight you think their testimony deserves.

A separate crime is charged against the defendant in each count. You must decide each count separately. Your verdict on one count should not control your verdict on the other counts.

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over your deliberation and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement, if you can do so. Your verdict, whether guilty or not guilty, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors. Do not be afraid to change your opinion if the discussion persuades you that you should, but do not come to a decision simply because other jurors think it's right.

It is important that you attempt to reach a unanimous verdict, but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence

simply to reach a verdict.

Perform these duties fairly and impartially. You should also not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement, if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it was wrong.

The defendant is charged in Counts 2 and 3 of the indictment with bringing an alien to the United States knowing or in reckless disregard of the fact that the alien has not received prior official authorization to come to, enter, or reside in the United States. For the defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt:

First, the defendant brought a person who was an alien to the United States for the purpose of the defendant's

commercial advantage or private gain;

Second, the defendant knew or was in reckless disregard of the fact that the person was an alien who had not received prior official authorization to come to, enter, or reside in the United States;

Third, the defendant acted with the intent to violate the United States immigration laws.

An "alien" is a person who is not a natural born or naturalized citizen of the United States.

The defendant is charged in Count 1 of the Indictment with Conspiring to Bring Undocumented Aliens to the United States for Financial Gain in violation of Title VIII, United States Code § 1324(a)(2)(B)(ii).  For the Defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about a date unknown and ending on or about March 11th, 2024, there was an agreement between two or more persons to commit at least one crime as charged in the Indictment;

And second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it;

Third, one of the members of the conspiracy performed at least one overt act after the agreement was made for the purposes -- for the purpose of carrying out the conspiracy.

A conspiracy is a kind of criminal partnership, an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful.  It does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is -- it is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.

You must find that there was a plan to commit at least one of the crimes alleged in the Indictment as an object of the conspiracy, with all of you agreeing to the particular crime which conspirators agreed to commit.

One becomes a member of the conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all of the details of the conspiracy.  Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators.

On the other hand, one who has no knowledge of a conspiracy but happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a

conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators nor merely by knowing that a conspiracy exists.

The crime of bringing aliens to the United States for financial gain includes the lesser crime of bringing aliens to the United States.  If, one, you are not convinced beyond a reasonable doubt that the defendant is guilty of bringing aliens to the United States for financial gain; and two, all of you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser crime of bringing aliens to the United States, you may find the defendant guilty of bringing aliens to the United States.

For the defendant to be found guilty of the lesser crime of bringing aliens to the United States, the Government must prove each of the following elements beyond a reasonable doubt:

First, the defendant brought a person who was an alien to the United States;

Second, the defendant knew or was in reckless disregard of the fact that the person was an alien who had not received prior official authorization to come to, enter, or reside in the United States;

And third, the defendant acted with the intent to violate the United States immigration laws.

An "alien" is a person who is not a natural born or

naturalized citizen of the United States.

You have heard a recording received into evidence. You will have access to the transcript of the recording to help you identify speakers as a guide. However, bear in mind that the recording is in evidence, not the transcript. If you heard something different from what appears in the transcript, what you heard is controlling.

You have heard a recording in the Spanish language. You will have access to the transcript of the recording that has been admitted into evidence. The transcript is an English-language translation of the recording.

Although some of you may know the Spanish language, it is important that all jurors consider the same evidence. The transcript is the evidence, not the foreign language spoken in the recording. Therefore, you must accept the English translation contained in the transcript and disregard any different meaning of the non-English words.

You have heard testimony of a witness who testified in the Spanish language. Witnesses who do not speak English or are more proficient in another language testified through an official court interpreter. Although some of you may know the Spanish language, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning. You must not make assumptions about what a

SER-327

witness or party -- about a witness or party based solely on the fact that an interpreter was used.

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. The Government is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions along with all other evidence in deciding whether the defendant acted knowingly.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the Government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all of the evidence or from lack of evidence. If, after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty.

On the other hand, if, after a careful and impartial consideration of all of the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

As we discussed in jury selection, everyone has

feelings, assumptions, perceptions, fears, and stereotypes about others.  Some of these we may not even be aware of, which is why they're called implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hardwired to make unconscious decisions.  Those unconscious decisions can impact what we see and hear, how we remember what we see and hear, and how we make important decisions.

Because you are making very important decisions in this case, you must, one, take all the time you need to reflect carefully and thoughtfully about the evidence;

Two, think about why you are making the decision you are making and examine it for bias.  Reconsider your first impressions of the people and the evidence in this case if the people involved in this case were from different backgrounds -- for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion, or sexual orientation, would you still view them and the evidence the same way.

Number 3, listen to one another.  You must carefully evaluate the evidence and resist and help each other resist any urge to reach a verdict influenced by bias for or against any party or witness.  Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions, and biases.  Listening to different perspectives may help you better identify the possible effects of these

hidden biases and have -- my apologies -- listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision-making.

Number 4, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The defendant acted with reckless disregard if the defendant knew of facts which, if considered and weighed in a reasonable manner, indicated substantial and unjustifiable risk that the alleged alien was, in fact, an alien and was in the United States unlawfully and the defendant knew of that risk.

During the trial the prosecutor asked the question about alien smuggling organizations. I sustained the Defense's objections to that question. The questions of the lawyers are not evidence.

You heard testimony from Customs and Border Protection Officer Alexander Medina that referred to alien smuggling organizations. I struck Officer Medina's response from the record. At that time, I instructed you to disregard that answer. Disregard the prosecutor's question and Officer Medina's reference to alien smuggling organizations. Do not consider either in reaching your decision or for any purpose whatsoever.

Mr. Rolon's theory of defense is that he had no

agreement with Posadas to bring undocumented people into the United States for financial gain, that he was not being paid and did not know about anybody else being paid, and that he believed Posadas's assertion that the material witnesses were his children.

You'll have a copy.

The Government may proceed.

### GOVERNMENT CLOSING ARGUMENT

**MR. BESHAR:**  Thank you, Your Honor.

Members of the jury, what we have presented to you over the last two days is alien smuggling caught on camera.  At every step along the way, the defendant, Miguel Rolon, was photographed or videotaped.  Remember that this was a five-hour business trip to Tijuana.

Keep in mind certain photos in particular.  I want to start on the left-hand side with the defendant, Miguel Rolon, wearing the same outfit that he was arrested in:  A white jacket, green hat, and dark pants.  We know from Yonathan's testimony yesterday that this was taken at the Tijuana house where Yonathan and Zulemy were staying for two weeks.  Look at the time stamp on that photo, 2:23 a.m.

Let's move forward in the early morning of March 11th, 2024, to 2:45 a.m.  Now we see, according to Yonathan's testimony, the four had gotten into the vehicle.  Melquides was in the driver's seat.  The defendant, Mr. Rolon, was in the

co-pilot seat, as Yonathan testified.  And the aliens, Yonathan and Zulemy, were in the back seat.  Think about where this photo was taken, looking forward in the vehicle.

And finally, we know that this act terminated with the defendant presenting United States passport cards for Yonathan and Zulemy at the port of entry at 5:26 a.m.  Keep these photos in mind.

The Court just briefly touched on the Indictment in this case.  I want to go through it briefly.  Count 1 is conspiracy to bring undocumented aliens to the United States for financial gain.  We'll get into that in a second.

Counts 2 and 3, bringing in those aliens, also for financial gain, broken out by alien, so by Yonathan and by Zulemy.  Three total counts, as you'll see on the verdict form in this case.

Let's start with conspiracy.  The Court briefly touched on it as well.  Three separate elements that the Government must prove beyond a reasonable doubt.  That burden is on us to prove it.

So let's start with Number 1.  Was there an agreement between two or more persons to bring aliens to the United States for financial gain?

Number 2, did the defendant, Mr. Rolon, become a member of the conspiracy knowing of at least one object and intending to help accomplish it?

And Number 3, did one of the members of the conspiracy, not necessarily Mr. Rolon, perform at least one overt act?

I want to be very clear on what the Government is not required to show as to Count 1 for conspiracy. We do not need to show that there was an agreed-upon amount between Melquides, the driver in the vehicle, Mr. Posadas, and the defendant. You heard from Yonathan that he was paying between 13,000 and 14,000 U.S. dollars. He said "100,000 quetzales," in his Guatemalan currency. We do not have to show that Mr. Rolon agreed with Mr. Posadas that he was going to get a certain cut of that money.

We do not need to show that Mr. Rolon and Mr. Posadas agreed on every single detail in the conspiracy. Maybe they weren't totally on board with every single detail. That's not what we're required to show.

The same thing applies to the identities of co-conspirators. You heard how this was a three-country smuggling enterprise from Guatemala, through Mexico, up to the San Ysidro Port of Entry in the United States. There were a lot of conspirators along the way. You've heard testimony regarding at least two, with the defendant, Mr. Rolon, and Melquides. There were others. But we don't need to show that. We don't need to show every single identity of who was involved in this conspiracy.

**SER-333**

Let's break each of those down.  So the first one, for conspiracy, was there an agreement to bring two or more persons -- excuse me.

Was there an agreement between two or more persons to bring aliens to the United States?  And think about this as a form, as the Court laid out, a criminal partnership.  Was there a plan?  Was there an agreement to smuggle aliens?

This was a five-hour business trip to Tijuana.  You know from the photo on the left-hand side of this screen that this was the defendant's sedan -- excuse me.  This was Melquides's sedan leaving the United States at 12:37 a.m.

Next we have the defendant, Mr. Rolon, in the same outfit at the Tijuana house at 2:23 a.m.  So we're proceeding in the early morning.

Same photo, 2:45 a.m.  They're all in the car. They've left the house after studying the passports at the house, and they're all in the car on the way to the port of entry.

One last photo on this screen, 4:10 a.m.  You can see the defendant's white jacket on the right side of this photo. Again, another photo taken from the back seat of the vehicle. Consider the positioning of everyone who's in the vehicle and how that changes later on, because we know from Yonathan's testimony that that will change.

But this was all part of the agreement:  We're going

down to Tijuana, we're going down to the stash house to pick them up, we're going to get them in the car, we're going to study the passports, we're going to go over the backstory, and we're going to cross them through the United States.

I want to briefly touch on Yonathan's testimony yesterday as an insider in that vehicle and what he shared as to the conspiracy front. First is the financial gain element. He testified that he was paying between 13- and $14,000 up front to be smuggled from his home in Guatemala up through the United States. Think about what he was paying for, he was paying for fake Mexican driver's licenses. Him and Zulemy received those. They also received a U.S. passport card, which had Joel's name and information on it. They were studying that information because they knew that was the story that they would get through at the port of entry.

Yonathan also described playing a pretend family with Zulemy and Yonathan and Melquides and his wife through Mexico. Melquides and his wife were the pretend parents of the two aliens. They described -- Yonathan described being met at the border by Melquides and his wife, given -- being given the Mexican driver's license, then getting on a plane to Tijuana, plane tickets that Melquides paid for.

Moving along. They were brought to the house in Tijuana where they waited for two weeks. Yonathan described that, waiting around. There was a possible driver that fell

**SER-335**

through before them.  So they're killing time for two weeks at the stash house.

Early in the morning, likely around 2:00 a.m., the defendant and Melquides arrive with the U.S. passports, and they study them.  They go over them.  That's going to be the story that they're going to use to cross.

Yonathan mentioned something interesting yesterday about overhearing discussion of families in the vehicle.  He didn't speak any English, but he was able to pick up, in Spanish and in English, that Melquides and the defendant were discussing their families in the front seat.  They're in the back seat, him and Zulemy.  Yonathan's overhearing Melquides and the defendant talking about their families.  These two people know each other.  There's backstories.  If you're able to talk about families, they know each other.

Last point on this from Yonathan is everyone had a role in this conspiracy.  Everyone had a role.  The defendant's role was going to be crossing the aliens through the port of entry, getting them through the Primary officer.  You heard from Officer Gonzalez about this.

Melquides also had a role in this conspiracy.  His role was to take the belongings, getting out just before, five minutes before the port of entry, getting the belongings from the trunk of the car, both Zulemy and Yonathan's luggage, and saying, "I'll meet you in LA."  Everyone had a role in this

conspiracy.

The conspiracy started well before March 11, 2024. And we know that because of Yonathan's text messages. He described texting directly at one point with Mel, on the far left side of this screen. But primarily, the coordinating and the smuggling arrangements went through his sister and brother-in-law. "Hermana" is the contact on his cell phone, as Yonathan described.

And look at what he was talking about with his sister in the lead-up to March 11, 2024. The sister is describing that the anthems of Mexico and Chiapas are different. "You need to learn the difference, Yonathan. Learn it, because you may be stopped at some point in Mexico, and you may be asked 'Well, what's the national anthem here?'" And he needs to be aware of that.

There's also references to coyotes. And if I'm not mistaken, "The coyote" (smuggler) will be with you guys." The sister is advising Yonathan about what's going to happen.

Last photo on this screen is the sister and Yonathan going back and forth regarding headshots, because we know that the sister was communicating with Melquides to get headshots onto the driver's licenses, the fake ones, in Mexico, and she's saying, "Lower your head a little bit more. Let's get a good photo here."

And finally, the sister is sending directly to

Yonathan the United States passport card that he would use later on. "Study this information. Learn it, because you're going to need it."

Yonathan's phone also had text messages directly with Zulemy. So remember that Zulemy and Yonathan are at the Tijuana house together for two weeks. They're just killing time, miles from the border, waiting to come into the United States. So of course they're going to have voice calls on March 8, 2024, going back and forth. They're going to have photos of Melquides, the same individual who brought them through Mexico and was in an accident, clearly.

And lastly, look at the -- the last photo on this is March 10, 2024. Zulemy and Yonathan are communicating information regarding the -- their parents', their fake parents', information. So Mrs. Posadas, Mr. Posadas, date of birth, place of birth, full name. Those are facts that they might need later on, and they were communicating about them the day before the offense.

Okay. Moving on to Element 2 of conspiracy, did the defendant, Mr. Miguel Rolon, become a member of that conspiracy? Did he intend to help accomplish one of the objects? We touched briefly on the roles in this. Let's think about it from these photos.

What were the roles? Defendant, Miguel Rolon, was in charge of crossing the bodies. His job was to go down to

**SER-338**

Tijuana in the sedan that he would use and, within five hours, then come right back.  His job was to get through Officer Gonzalez at primary inspection.

On the other hand, Melquides's job -- another co-conspirator in this conspiracy -- was to cross the aliens' belongings.  We know that this photo was taken at 7:44 a.m. Look at Melquides's bandaged hand.  We know he was just in an accident.  And he has two pieces of suitcases -- two suitcases. Yonathan described his suitcase as soft, which is right before the officer.

Melquides was also responsible not just for the belongings of the aliens, not just saying, "I'll meet you in L.A.," but also providing the documentation that they would use, so the U.S. passport cards; that's how they're going to get through the port of entry.

But of note, and you heard a bit about this, Melquides has an alien-smuggling past.  He was arrested in 2006 for the very same conduct.  There's a reason he got out of the car.  He would be under heightened scrutiny at the port of entry. There's a reason he got out five minutes before the port of entry and crossed separately.  He would be under heightened scrutiny if he had other people in his car, and he knew that wouldn't work for this case.

Okay.  Last element for conspiracy.  This is Count 1 again.  One of the members of the conspiracy performed at least

one overt act.

Now, you all have to agree that the Government has met, beyond a reasonable doubt, this element.  What you don't all have to unanimously agree on is which overt act was taken in furtherance of the conspiracy.  And I want to give you some examples on what those overt acts could be.

The first is the start of this story, is the defendant providing the sedan that he would use.  We know the sedan was registered to Melquides's wife.  And them driving across the border at 12:37 a.m.  We know that from the TECS records that Officer Corrales testified to.  I'll let you all be the judge if you can see a white jacket in the front passenger seat of that vehicle.  That's one overt act.

What's another example?  Both going down to the Tijuana house together to pick up the aliens, learning the passports there.  Yonathan testified yesterday that they were shown the passports, the physical ones, at the house.  We know from his text messages, Yonathan, that he had seen it before, but he hadn't seen the physical one.  So they were studying it.  They were studying the backstory, the information they would need.

Then the four got in the car, on the way to the port of entry.  2:45, so within a short amount of time.  They're at the house, and then they're on.  This is a business trip to get to the port of entry.

Another overt act, the defendant presenting identification cards on behalf of the two passengers in his vehicle -- supposedly Joel and Elizabeth, but we know that wasn't true.

Other overt acts: We know smuggling arrangements were made on behalf of Yonathan, paying 13- to $14,000 to be smuggled into the United States. That was done before March 11 of 2024.

Another overt act: Melquides providing suitcases -- or excuse me -- crossing suitcases. We know that that was after the defendant's entry. So 7:44 a.m., sometime after the defendant's entry.

Okay. We believe that we've met every single element of conspiracy, breaking down each of those portions. And remember, not necessarily agreeing on which overt act was performed.

Let's turn to Counts 2 and 3, bringing in for financial gain. Three elements again.

First element: The defendant brought Yonathan and Zulemy to the U.S. for financial gain. Let's pay attention to that word "financial gain." We're going to come back to that.

The defendant knew or was in reckless disregard of the fact that Yonathan and Zulemy were aliens. Knowledge is also key here. We're going to come back to that.

And finally, the defendant had the intent to violate

U.S. immigration laws.  Let's break each of those down.  First, this was a smuggling venture done for financial gain.

The defendant, Miguel Rolon, did not know Yonathan and Zulemy.  Yonathan testified yesterday that he had never met the defendant before he arrived at the house.  He came down there to pick them up, and he wasn't doing it out of the goodness of his heart; he was doing it to get paid.  And we know that Yonathan was paying 100,000 *quetzales* up front to be smuggled into the U.S.

There is no other reasonable explanation for why the defendant would be down at Tijuana at that hour.  You're going to hear some about the dentist.  We talked through that of this trial.  There's no reasonable explanation that the dentist would be open at 5:00 a.m.  The stories don't match up.  He's down there to cross the aliens and to get his cut.

Okay.  This is -- we're jumping around a bit to the third element of financial gain:  Did the defendant have the intent to violate U.S. immigration laws?

Here, what the Government has to show is that the defendant knew that Yonathan and Zulemy were aliens and intended to bring them across the border.  If so then he had the intent to violate this country's immigration laws.  Okay.

**MR. BUGARIN:**  Objection, Your Honor.  It misstates the law.

**THE COURT:**  My apologies?

MR. BUGARIN: Objection, Your Honor. It misstates the law.

THE COURT: Can you rephrase that?

MR. BUGARIN: Sure.

THE COURT: One moment, one moment.

I'm going to sustain that objection, and I'm going to instruct the jury to disregard that portion of the argument.

And in either case, I've already instructed you that arguments and questions of the lawyers are not evidence. But you are to disregard that and apply the law as I've instructed you to do so and pursuant to the form that I'm going to -- the jury instructions that I'm going to give you to take back to the deliberation room.

You may proceed, Counsel.

MR. BESHAR: Thank you, Your Honor.

THE COURT: Of course.

MR. BESHAR: Let's focus on knowledge here. How did the defendant, Miguel Rolon, know that Yonathan and Zulemy were aliens? Let's recap all of that evidence.

The first is Yonathan's testifying to the defendant's explicit coaching of him, what the defendant, Miguel Rolon, was saying to him from the time that they were at the Tijuana house together, approximately 2:23 a.m. to 5:26 a.m., when they crossed. First he said -- according to Yonathan, the defendant said, "If asked, you're coming from the dentist." The dentist

backstory was in the works prior to when he, the defendant, talked to the Primary officer, prior to his post-arrest statement.  This was the backstory that they were going to use about the dentist.

The defendant, Miguel Rolon, said, "Let me do the talking.  Let me talk to the Primary officer.  You guys just raise your hands.  When you hear the name 'Joel' or 'Elizabeth,' just raise your hands."

We talked about the Arroyo school.  Yonathan said that he was advised to say that he is a student at the Arroyo. Yonathan was asked that very question by the Primary officer "What high school did you go to?"  And he couldn't answer.

You saw the defendant -- you'll watch the clip in just a second -- turn around before he eventually said himself, "Arroyo."  He knew the backstory, and he was helping out Yonathan in the -- in the back seat.

Last point on this for defendant's explicit coaching. How did he know that they were aliens?  Because he's advising them to lie to officers.  He's advising them the story that they're going to tell.  He's saying "Be calm."

Yonathan described how they were getting a bit nervous in the lead-up to the Primary officer.  They knew they'd have to hold up the story.  So the defendant, Mr. Rolon, turned up the music and said "Be calm, everyone."  You know that he said it a second time because Officer Gonzalez referred the vehicle

to Secondary Inspection, and he said "Be calm."

This was the video taken by Yonathan on his cell phone.  I want you to pay close attention here.

**(Video played in open court).**

*MR. BESHAR:*  Okay.  Eleven-video taken from the back seat of the vehicle.  Remember he described where the occupants were sitting.  You have Melquides, the co-conspirator, in the driver's seat; the defendant -- the copilot, as Yonathan put it -- and Yonathan and Zulemy are in the back seat.  Yonathan took this video.

What did we hear on that video?  What was the audio? "So I have to fabricate a -- something where I am innocent, where it was not me.  So I have to fabricate a -- something where I am innocent, where it was not me."

Yonathan testified that Melquides was saying that to the defendant.  Driver is talking to front-seat passenger here, and they're talking about fabrication, being innocent, where "it was not me."  He knows that they're aliens in his car.

I want you to pay very close attention to that video. Because in the very first frame, you can see the defendant on the screen.  You see the sleeve of the white jacket that the defendant was arrested in.  You see the dark pants.  This is him in the front seat.

And you see that cell phone.  Look at the indentation of the cell phone case and how it matches up to the right-hand

side of the screen.  That's the defendant, Mr. Rolon's, cell phone that Officer Corrales testified to.  That's the same cell phone that he got following his arrest.

They're all in the same car.  They're talking about fabrication.  Mr. Rolon was aware that the aliens -- excuse me -- that the aliens were in his car.

More photos to confirm Yonathan's testimony yesterday. 2:45 a.m. on the left-hand side.  We know where everyone is in the vehicle.  This is Yonathan in the back seat.  I believe you can see the brim of the defendant's hat in the top right end of this photo.  That's at 2:45 a.m.  They're going to the port of entry.

Fast-forward to 4:10 a.m.  There's the defendant's white jacket, still in the front seat.  Everyone's remained in place.  We're talking in the car, but we're on to the port of entry.

Now look at what changes in this photo.  We know that Yonathan testified that Melquides, the driver, exited the vehicle, went to the trunk, got Zulemy's hard suitcase and Yonathan's soft suitcase, and said, "I'll meet you in LA."  He couldn't cross with this group, so he goes and takes the belongings through pedestrian, and everyone else in the car rearranges:  Co-pilot, the defendant, moves to the driver's seat.  Back seat alien, Zulemy, she moves to the front seat where she took this photo.  Look at how you can see the

dashboard in the forefront of the photo. She's now in the front seat. That confirms what Yonathan was describing yesterday of the arrangement, that they were going to rearrange in the car. And look at how close they are to the San Ysidro Port of Entry, yards away, where they'll interact with Officer Gonzalez.

So let's get to two clips in particular from the six-minute interaction of the defendant, Yonathan, and Zulemy in the car, with the Primary officer, Officer Gonzalez.

**(Video played in open court).**

*MR. BESHAR:* Think about all the statements you just heard from the defendant in that clip, 15 seconds "They were at the dentist, and I just came to pick them up." It's 5:26 a.m. "They are my friends."

He didn't say "They're Mel's kids." "They're my friends, and they asked me for a favor." Remember those statements.

One more clip. We talked about Arroyo, which was the high school that Yonathan was instructed to say in case the Primary officer asked. Watch the defendant's conduct in this. Watch his mannerisms in this short clip.

**(Video played in open court).**

*MR. BESHAR:* Officer Gonzalez is saying to the back-seat alien, who he had suspicions of because he was wearing a hat, "What high school did you go to?" He said it

twice.  Yonathan didn't answer.  You see the defendant going over his shoulder before he eventually turns around and says himself "Arroyo."  He knew the answer that Yonathan was supposed to say, and he did it for him.

Yesterday from Officer Corrales, you heard about the defendant's post-arrest statement and the two versions that he gave to Officer Corrales for what happened.  The first was the taco-stand ride, that Yonathan and Zulemy, then supposedly complete strangers, had come up to him at that Tijuana taco stand at 3:00 a.m. and asked for a ride, saying, "I never met them before.  They came up to me."  But we know that just 15 minutes later he tells a different story.  Instead, it's about his coworker Mel, and his coworker Mel asking if the defendant would do him a favor by picking up his kids from the dentist, again at 5:00 a.m.

Couple statements I just want to flag in each of those stories.  Number 1, the defendant said in Version Number 1 that he picked up the passengers at the taco stand and went straight to the border.  But he was photographed by Zulemy at 2:23 a.m. at a house.  Where was that photograph taken?  It's hard to explain that away.

Number 2, the defendant denied saying to the Primary officer that his passengers were his friends.  But you just watched that clip.  You saw him say, "They're my friends.  They asked me for a favor.  I just came to pick them up."

SER-348

And then the dentist backstory. In the first version, in the taco-stand version, the defendant says, "They said the dentist" -- as in "they," Yonathan and Zulemy -- reported to the Primary officer that "We were at the dentist." But we know that's not true from the clip. The defendant is the one who reported the backstory. They were at the dentist, and I just came to pick them up.

Story No. 2 is also hard to believe. Why would the defendant not mention Mel and Mel's getting out of the car and that version? Think about how they were all photographed and videoed going to the port of entry. He's not going down there to pick up Mel's kids at the dentist. They were all just in the car minutes before the port of entry.

Also consider the defendant's statement while in custody. And I'll play this clip now.

**(Audio clip played in open court).**

**MR. BESHAR:** The defendant said there two statements regarding *pollos*. "They're telling on me. The *pollos* are telling on me. The *pollos* are snitching on me."

You heard from Officer Medina that *pollo* is a common slang term used by alien smugglers to refer to the undocumented persons they transport. The defendant was using "*pollo*" for that exact reason. He did not say "Mel's kids." He did not say "Yonathan and Zulemy." He did not say "strangers." He said "*Pollos.*" He was using that word for a reason, as you

just heard.

Okay. Final point on knowledge. This is the last element of bringing in for financial gain. How do we know that the defendant, Miguel Rolon, was aware that the aliens in his back seat were -- were actually undocumented?

Think about all the evidence here. Number 1, you had Yonathan's insider account, who testified yesterday. He was in that vehicle. He testified to the defendant's explicit coaching: "Tell them you were at the dentist. Tell them that you went to the Arroyo High School. If you hear the name 'Joel' or 'Elizabeth,' raise your hand."

Those are all things that transpired when they interacted with the Primary officer. They got into the dentist. They got into the high school. You saw the Primary officer read out, "Is Joel here? Is Elizabeth here?" And they raised their hands, and the defendant pointed at each of them. He knew their names.

You know about Yonathan's text messages. This was done well before March 11, 2024. They were communicating. They were coordinating to be crossed into the United States.

Think about the photo and the video. Every step of the way, the defendant was photographed, crossing at 12:37 a.m. in the same sedan he would use, 2:23 a.m. at the house, and then on to the port of entry at 5:26. This was an alien smuggling act caught on camera.

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 53 of 122
Case 3:24-cr-00684-LL    Document 159    Filed 08/25/25    PageID.1241    Page 54 of

CLOSING ARGUMENT | DEFENSE
81

54

Last point on this is the roles. Everyone had a role to play. This was a business trip to go down to Tijuana to pick up these two aliens. They're back within five hours. Everyone has a role to play. Mr. Rolon, the defendant, you're going to cross the bodies across the border. You're going to work on the backstory; Melquides, you're going to handle the belongings. You're going to handle the documentation. This was the criminal conspiracy, the enterprise, the agreement.

Members of the jury, thank you for your attention. We ask that you find the defendant, Miguel Rolon, guilty on all accounts.

**THE COURT:** Thank you, Counsel.

From the Defense?

**DEFENSE CLOSING ARGUMENT**

**MR. BUGARIN:** "Because I'm stupid. Because I'm stupid."

By now we've all seen Mr. Rolon's post-arrest interview. He gave a story about how he went to his dad's house, and after he stopped at a taco stand and picked up two people as a favor. When pressed on this story, he came clean. He told the truth. And the truth was that Mr. Posadas asked Mr. Rolon to come down with him to pick up his kids from the dentist. When asked why he gave that first story, Mr. Rolon said, "Because I'm stupid."

We've all been there. We've all said or done

something silly for no good reason.  But unfortunately for Mr. Rolon, it's led to his arrest and facing criminal charges.

By now you've heard of Mr. Posadas's past.  You know that he and his wife were detained for doing this exact same thing in 2006.  Ms. Maria Uitz, Mr. Posadas's wife, and Mr. Posadas himself.  We know that they used their daughter's birth certificate to try to bring someone -- to try to smuggle somebody into the United States, just as they had used their children's passports in this case.

To Mr. Posadas, his family is a resource for him to accomplish his goals of smuggling people into the United States.  The car used in this case, registered to Yenifer Posadas.  The passports in this case, registered -- I'm sorry -- belonging to Gabriela Posadas and Joel Posadas, Mr. Posadas's children.  This is very much a family enterprise. This is a family business.  And Mr. Rolon, he's not a part of that family.  He's an outsider.  He's expendable.

Now, we know that Mr. Posadas had been in contact with the material witnesses at least six weeks before they attempted to cross into the U.S. with phone calls, messages, and photos to coach them and to teach them on the journey ahead.  There's no -- there's no text messages with Mr. Rolon.  There is no communication with Mr. Rolon and the material witnesses.

And as you heard, Mr. Posadas and his wife traveled down to Guatemala and personally guided the material witnesses

2,000 miles to the doorsteps of the United States. And in that trip, they were provided -- by Mr. Posadas, they were provided false Mexican IDs. He handed them his own children's passports and stashed them in Tijuana for two weeks as he devised a plan to get them into the United States.

You heard from Mr. Ixan yesterday. There was another driver involved, but she fell ill, and now Mr. Posadas was forced to pivot. So he brings in Mr. Rolon. He tells Mr. Rolon that "I need you to come with me to pick up my kids from the dentist."

At this point Mr. Posadas has a broken hand. He's asking him last minute, "Do this favor for me. Just come take a ride with me to pick up my kids." Mr. Rolon himself is a father to seven children. Seeing Mr. Posadas in a pinch, he said, "Okay, I'll take a ride with you."

So they go down to Tijuana to pick up the supposed Posadas children. And for Mr. Rolon, there is no reason for him to doubt that this is the case. For Mr. Posadas, he sees him as expendable. He sees him as someone he can use. And in Mr. Rolon's words, "Sometimes Mr. Rolon can be stupid."

So they ride down to Tijuana. They pick up these kids. And remember, Posadas was driving the car that morning. He's driving the car. It's his family's car, registered to Yenifer Posadas. He has his children's passports ready to go, so nothing out of the ordinary.

But then they're in the line. Mr. Posadas gets out of the car and takes the material witnesses' suitcases. And we don't know what Mr. Rolon took this to mean, but it's not our duty to speculate. You must evaluate the evidence presented.

So Mr. Posadas leaves the car, goes down to the Pedestrian lane with the material witnesses' suitcases, but he leaves Mr. Rolon in the car holding the proverbial bag, leaving him as the fall guy. Because he's not family, so why did he care? Why did he care? And while Mr. Rolon -- I'm sorry, excuse me -- while Mr. Posadas is at the Primary lane -- in the Pedestrian lane, Mr. Rolon arrives at the Primary.

You heard testimony from Officer Gonzalez. You heard how Mr. Rolon was compliant. As he rolled up -- rolled up to Primary, he had his windows down. He did everything they asked of him: Pop the trunk, answer these questions. Before it ended, "You're going to head to Secondary." The whole time Mr. Rolon was upfront. He had nothing to hide.

The Government wants -- is pointing to this interaction here. They're saying that Mr. Rolon offered up answers for the material witnesses.

**Let's watch this video again.**

                    **(Video played in open court).**

    *MR. BUGARIN:* So the Government just said in their closing that Mr. Gonzalez did not get an answer from Mr. Ixan. Well, that's not what he said yesterday -- two days ago, I

**SER-354**

apologize.  It's been a long trial.

He said, "I couldn't understand him.  I couldn't hear him."

If you watch that video, you'll hear two loud chopper-style motorcycles driving on by.  The windows are rolled down.  Sound's traveling through the car, rattling the car.  And if you watched closely, they caught Mr. Rolon's attention, those motorcycles.

And Officer Gonzalez said, "I couldn't hear the passenger in the back."  So Mr. Rolon, trying to be helpful, repeats "Arroyo," as in "Arroyo High School," San Bernardino, California, where Mr. Posadas lives and presumably where Mr. Posadas's kids go to school.

So then Mr. Rolon, or Miguel, is sent to Secondary Inspection.  Officer Gonzalez says, "You're going to be sent to Secondary."  Mr. Rolon says, "Okay," and that he had been there before.

You've seen Mr. Rolon's crossing records.  You've seen that he's crossed into the United States four times by a car. And of those four times, three of those times he's been sent to Customs.  He's been sent to Secondary Inspection.

Why would someone who is so frequently sent to Secondary Inspection knowingly bring undocumented people into the United States?  Mr. Rolon had to have known that they were going to be keeping a close eye on him.  It makes no sense for

Mr. Rolon to knowingly put himself in that position. He was sent to Secondary Inspection as recent as two days before that arrest. And as Officer Perez testified, Secondary Inspection has a higher level of scrutiny than Primary. And Mr. Rolon knows this.

So let's talk about the material witnesses in this case. You see here -- we've seen this photo before. Next to them you see the false Mexican IDs, that they pretended to be Mexican throughout their journey north, that they pretended to pose as Mr. Posadas's kids throughout their journey north. You see here the passport cards that they presented, that they posed as Mr. Posadas's children, Joel Posadas and Gabriela Posadas.

Let's talk about Ms. Raquec-Mucia. Ms. Raquec failed to tell the truth about where she was born. She failed to tell the truth about being a Guatemalan citizen. And ultimately, she presented a passport card that was not hers.

And Mr. Ixan, you heard from him yesterday. And, look, he seems like a good kid. He's got a lot on the line. His goal is to remain in the United States. And he's shown throughout this case that he's been untruthful. And just because he's a good kid, it doesn't change the fact that he's been untruthful throughout this case. The same government that decides whether he gets to stay in the United States is the same government prosecuting Mr. Rolon.

And beyond that, he failed to tell the truth about where he was from.  He failed to tell the truth that he was Guatemalan.  And folks, he also lied about what school he went to.  And under interview -- in his interview under oath, he failed to tell the truth.  That's the same oath that he took yesterday.  It didn't matter to him then, and ladies and gentlemen, it didn't matter to him yesterday.

He said that Mr. Rolon presented him with this passport card.  But we know that he's had this information for much longer than that in his phone.  We know that he traveled with Mr. Posadas for 2,000 miles on this trip.  He failed to tell the truth then, and he failed to tell the truth now.

It was not until they were confronted with these inconsistencies after their arrest that they admitted that they were from Guatemala.  They have shown time and time again that they will lie to reach their goal of getting into the United States and staying here.  They had meticulously prepared for this trip with fake Mexican IDs, passports that weren't theirs, and a well-thoughtout story with the help of the smuggler, Mr. Posadas, and his family.  So it's clear they were working with Mr. Posadas, and they kept Mr. Rolon in the dark, and he was used and discarded.

And in their opening, the Government went at lengths to say of how you will hear from Ms. Raquec-Mucia, and the Government failed to deliver on that promise.  They wrote a

check that they couldn't cash, and now they want you to forget about it.

And you heard from Officer Corrales, you heard from him yesterday, how there was many other people involved in this conspiracy and how the Government failed to follow up. Yenifer Posadas and Oscar Guillen, the registered owners of the car used that day; Maynor Sir, who we know facilitated travel for Ms. Raquec with Mr. Posadas; Mr. Ixan's sister, who we know was working with Mr. Posadas, sending pictures back and forth, preparing for her brother's journey into the United States.

There was no interview, no follow-up, no phone call, nothing. And Officer Corrales says that this didn't seem relevant to him. Well, you know who it seems relevant to? Mr. Rolon. And this may just be another day at the office for Officer Corrales, but for Mr. Rolon, facing federal charges, this is the biggest moment of his life. He deserves more. And frankly, ladies and gentlemen, you deserve more.

All right. Let's talk about that video, that video of Mr. Posadas in the car. The Government showed it to you in their closing. You watched that video closely. Mr. Posadas says this thing. And you'll notice there's not even a reaction for Mr. Rolon. He's barely on camera. They're pointing to his hand, saying, "Okay, this guy's in on it."

But as we know, it's the early hours of the morning, Mr. Posadas saying these things in the early hours of the

morning.  For all we know, Mr. Rolon could have been sleeping. He could have had his AirPods in.  There are so many explanations as to what could have happened.

But the Government wants you to latch on to this moment.  But what we do see in this video is Mr. Posadas conspiring with the material witnesses, drilling it into their heads that they have to protect him, just as he had been drilling this into their head throughout their 2,000-mile journey north from Guatemala.

You heard from Mr. Ixan.  You heard how Mr. Posadas told them that they were to pose as his children.  You heard how Mr. Posadas provided information to them about him and his wife.  They had been meticulously coached over and over again throughout this journey.  It's a long journey, 2,000 miles. People get cozy together.  Mr. Rolon, he's not a part of that journey.  They don't care what happens to him.

And folks, throughout this process, we have not heard one word from Mr. Posadas's wife.  She was there through the whole thing.  She knows what happened.  She knows her family's involved.  And yet it's Mr. Rolon who's sitting here being accused of a conspiracy.  Again, there is no follow-up, no interview, nothing.

And we know that Mr. Rolon was subsequently arrested and transported to the MCC.  Officer Corrales testified that Mr. Rolon at the time of his arrest didn't have a dime on him.

And after his interview, Mr. Rolon gave them permission to search his phone, even helped them find Mr. Posadas's number, because Mr. Rolon had nothing to hide.

Let's talk about the phone call. *Pollos*. The Government's pointing to this phone call of Mr. Rolon using the word "*pollos*" as definitive proof that he's a part of this conspiracy, as definitive proof that he is, indeed, a smuggler. But as we've heard, Mr. Rolon had been at MCC. That's here in San Diego. And we've heard from Officer Medina talk about this term "*pollos*." It's a commonly used slang term. Mr. Medina testified that this is a term that's commonly used in the southwest border region.

And we heard from Officer Casanola testify, the officer who testified about the jail calls, that people who are housed at MCC are largely people who are accused of crimes at the border. And look, it's no secret. People in jail, they talk to each other. They don't just stay silent and, you know, look at the ground and keep moving. They talk to each other. We know that there are people accused of human smuggling at MCC. We know people that are from the southwest border region are housed at MCC.

Mr. Rolon using the word "*pollos*" in a phone call has no bearing on his guilt. The Government wants you to believe that only people who use the word "*pollos*" are involved in human smuggling. They're pointing to this phone call as the

SER-360

smoking gun in their case.  It's ridiculous.

Let's think back to what we've seen throughout the evidence in this case.

The Government has failed to show you that there was an agreement between Mr. Rolon and Mr. Posadas to bring undocumented people into the United States.  The Government has failed to show you that Mr. Rolon knew about an agreement between Mr. Posadas and the material witnesses.  That's because he didn't know.  The Government has failed to show you, and they have not shown you at all, that Mr. Rolon had something to gain from this.  It's because he had nothing to gain.

I'm sorry.

The Government wants you to fill in the gaps of this half-baked conspiracy.  That's not what you're here to do. You're not here to speculate.  You're here to see the evidence that's been presented to you and determine if the Government has proven their case -- has proven the burden beyond a reasonable doubt.

We've been hearing this term a lot, "beyond a reasonable doubt."  And let me tell you real quick about those gaps that the Government wants you to fill.  That's their burden.  That's their burden to fill.  In their closing they say here that, "We don't have to prove all this stuff."  But that's their burden.  Those gaps -- those gaps are reasonable doubt.

Now, speaking of reasonable doubt -- I know you've heard this so many times, and I'm sorry, but I'm going to just one more time talk about it.  That's the highest level of burden that our justice system affords.  That means if you have any doubts as to the Government's story, you cannot find someone guilty.

Again, you've heard all the evidence in this case. There is no mention anywhere in the evidence presented to you that Mr. Rolon and Mr. Posadas had an agreement to bring undocumented people into the United States for financial gain. There is no evidence anywhere that Mr. Rolon knew about an agreement between the smuggler, Mr. Posadas, and the material witnesses in this case.  Nowhere.

And ladies and gentlemen, there is a conspiracy in this case.  Mr. Rolon is not part of that conspiracy.  He's an outsider.  He's not family.  Just throw him away.

As I mentioned, there's a lot of gaps here.  There's a lot of reasonable doubt.  So we ask you, because it's truth, Mr. Rolon is not guilty.  So we ask you to find him not guilty on all three counts.  Thank you.

**THE COURT:**  Thank you, Counsel.

Members of the jury, being that the Government has the burden in this case, they are permitted to speak to you one last time.  So they will proceed now with their rebuttal closing.

Counsel.

### GOVERNMENT REBUTTAL CLOSING

**MR. FAWCETT:**  I'll try to be brief.  I know it's been a long trial, and the time is almost yours to take it under consideration.

I want to point out something, though, that Judge Lopez mentioned during jury selection a couple of days ago. She said that you are not asked -- when you come in as a juror in this case, you're not asked to leave your common sense at the door.  And I think that's an important point:  Keep your common sense.  Take it with you.  Use it.

The evidence has been presented to you.  It's before you.  You've seen it.  And it's now time to consider that evidence and to determine what really happened.

I'd like to address a few points that Defense Counsel brought up.  First, if we can just bring up Government's 49, please?  And I'm going to zoom in on the table there on the right-hand side.

Defense Counsel just said Mr. Rolon, out of four times that he has crossed in a vehicle, three of those times he's gone to Secondary.  So he knew.  He should have expected that he'd be under heightened scrutiny because -- because of three of those times that he went to Secondary Inspection.

Well, just bear in mind that top column there, or that top row.  That's the day he was arrested.  So that -- that

**SER-363**

doesn't count. He hadn't -- he hadn't experienced that yet. So before the day he was arrested, he had crossed three times in his entire life at the port of entry. And I'd just like to show the dates on these. One of them was a couple days earlier. And then before that it was 2022, two years earlier almost.

And you heard testimony from one of the officers about what happens in Secondary. And Defense Counsel asked about inspections and a -- a seven-point inspection to find contraband. So any experience he would have had at Secondary Inspection is likely to have aligned with what the officer testified about, a search for contraband.

The defendant didn't have contraband in that car. He had people and fake documents for those people that he was already talking to an officer with and showing those documents to and trying to pass them off. So the idea that the defendant's experience at the port of entry would have made it unreasonable for him to even try to cross with people just doesn't comport with the evidence that's before you, ladies and gentlemen.

Defense Counsel also mentioned that there were no text messages between the material witnesses in this case and the defendant found on the defendant's phone. Now, when he asked the officer about this, you heard what the officer said. He said, "In my experience that that almost never happens." Not a

**SER-364**

surprise at all.  And that's why the defendant had no problem showing his phone to the officers, because he knew he wasn't the one who had been texting with these material witnesses. That wasn't his role in this conspiracy, so he wasn't worried about that.

Defense also brought up the fact that you haven't heard from Zulemy.  That's true.  Now, you have heard a lot about her because you heard from Yonathan, who crossed with her and traveled with her all this way.  In fact, you saw some of their messages.  And you saw, from Zulemy's point of view, pictures taken in the car with the four of them traveling together.

You know what happened in this conspiracy because you heard it firsthand from Yonathan, and you've seen the evidence that corroborates Yonathan's testimony.

Defense Counsel said -- or they came here and they questioned Yonathan's credibility, saying specifically that he lied yesterday under oath to you.  That is not the determination of the Government or of the Defense Counsel or the Judge in this case to determine the credibility of the witnesses.  That is your job.  You're the finders of fact, and you are the judges of credibility.

You watched Yonathan testify yesterday, and it is your job to determine whether he was credible.  And part of that determination can involve viewing the evidence and seeing

whether it supports what he said.  The evidence that you've been presented with supports the testimony that Yonathan gave yesterday.  He talked about the fact that the defendant, along with Melquides, arrived at that house they were staying at in Tijuana, early hours of the morning.

And then you saw Government's Exhibit 12.  You saw the defendant sitting in that house.  This is time stamped 2:23 in the morning on the morning of that arrest.  That corroborates what Yonathan told you.

You saw those pictures.  I won't go through them again, but the pictures that go -- show the journey with the four people in the car and then eventually with three people in the car right before the port of entry.  You saw the video in which the defendant is sitting in the car as his co-conspirator, Melquides, tells him something about fabricating something to make it like he's innocent.  All of these pieces of evidence corroborate the testimony that Yonathan gave.

But what about the story -- or the stories, rather, that the defendant said -- or the defendant gave when he was interviewed after his arrest?  There's no reasonable explanation for the defendant's lie in that interview that he was just at a taco stand at 2:00 in the morning, or early in the morning, and that a couple of strangers just asked him for a ride.

SER-366

Defense Counsel said, "It was stupid, it was a mistake, he said it for no reason, and now that's why he's in trouble."  Oh, there was a reason.  The reason was trying to hide his role in this conspiracy, trying to pull a fast one, pull the wool over the eyes of the investigators.  But as you saw, that story didn't make any sense, and they called him out on it, and he changed his story.

And the second story that he gave was that his friend, Mel, asked him to pick up his kids from the dentist.  The way that Defense Counsel put it is that Mel said, "Come take a ride with me."  That's not what the video showed.  That's not the story that he told the investigators, not "Come take a ride with me."  But he said that he was going to pick up Mel's kids.

Now, set aside the fact that, as the defendant himself acknowledged in that interview, what dentist is open at 2:00 in the morning?  It's a ridiculous story on its face.  But we have the video and the photos showing that Melquides was driving that car, that the four of them were in that car together.  Why in the world would he need the defendant to ride with him to pick up kids from the dentist?

The story makes no sense, and the evidence doesn't support it.  Because we know that the defendant was at that house in Tijuana.  We know he was there.  And you heard Yonathan testify that he was there when they got their passport cards and were coached on who to say they were.

You heard Yonathan say that the defendant told him that if he's asked where he went to school, to say he went -- that it was "the Arroyo."  He was the one coaching those material witnesses on what to say.  That all points directly to his knowledge.

The phone call from the jail points to his knowledge too.  Defense says, "This is what the Government claims is their smoking gun."  No.  It's just one piece of the puzzle.  And we asked you to look at all of the pieces of evidence, all of the pieces of the puzzle, not just one thing or another.

But listen to what he says:  "The *pollos* are snitching."  "Snitching," what does that mean?  He's talking about the undocumented persons.  He's concerned that they're snitching, ratting him out, telling the authorities about what really happened.

And then, finally, the idea that the defendant has nothing to gain.  Well, that's what his claim was in the interview with the officers.  But there's no reasonable explanation for his behavior other than a for-profit alien smuggling venture.

Yonathan, a complete stranger, is paying a large sum of money to be smuggled into the United States, and the defendant is participating as a conspirator, along with several other people, some who you've heard have been arrested and some not.  There is no explanation for his participation other than

**SER-368**

his expectation that he was going to get paid for that.

This is a case of alien smuggling for financial gain. And ladies and gentlemen, the burden's on the Government to prove each of those elements beyond a reasonable doubt. It's a high burden. But we have met that burden, and we would ask you to come to the only verdict that the evidence supports, which is a verdict of guilty on all counts. Thank you.

THE COURT: Thank you, Counsel.

Well, this is the moment you've all been waiting for. I like to tell jurors -- I'm pretty sure I said it earlier on -- in my view, and I know I speak for the lawyers as well, you all are the most important people in this room, and you have been throughout this process. It is your responsibility at this point to begin your deliberations in light of everything that we've discussed.

For our alternate, I -- this is a sad moment for me. Maybe it's not for you. But, you know, you sit here and you put in the time and effort and the attention, and at this juncture, we do excuse you because we have all 12 jurors. So thank you very much for your service. I know, again, I speak on behalf of all of us.

We will swear in our bailiffs.

THE CLERK: Leave your notebook, please.

THE COURT: Thank you very much. Have a good weekend.

THE CLERK: Please raise your right hands.

SER-369

(Bailiffs duly sworn.)

THE COURT: All right. They will escort the jurors into the deliberation room.

(Jury retires to the deliberation room at 11:17 a.m.)

THE COURT: All right. I want to go over my list of exhibits, make sure that it's the same as everybody else's.

MR. GARRISON: Yes, Your Honor.

Before -- before we do that, there's one -- one thing we forgot.

(Court Reporter interruption.)

MR. GARRISON: Oh, I'm sorry. You got me. I thought I was going to be perfect.

All right. So yesterday the Court took the Rule 29 under submission.

THE COURT: Correct.

MR. GARRISON: And then we -- we didn't get a ruling this morning on it.

THE COURT: So at this -- at this juncture I will deny the Rule 29. I believe that there's enough evidence presented in the Government's case-in-chief for the trial -- for the determination to go to the jury.

MR. GARRISON: Thank you.

THE COURT: And then also Mr. Garrison, I'll say it now in case we get hectic in the afternoon, depending on what the verdict is, I will allow sufficient time for any post-trial

motions that you may or may not need to raise at the time the verdict comes.

**MR. GARRISON:**  Okay.  Thank you, Your Honor.

**THE COURT:**  Of course.

All right.  So this is the Government's exhibits.  I have admitted 5, 6 -- let me just do this easier -- 5 through 18.

**THE CLERK:**  I don't believe Number 13.

**THE COURT:**  Minus 13, correct.  I apologize.

So 5 through 12, 14 through 18, 35 through 49, 50 to 52, 54 to 59, 65 and 66, 69 and 70.

For the Defense, E4 through E6.

**THE CLERK:**  Your Honor, I have an "E7."

**THE COURT:**  You have E7, Rhea?

**THE CLERK:**  Yes.

**MR. GARRISON:**  I believe it was -- instead of E6, it was E7 that came in, Your Honor.

**THE CLERK:**  Correct.

**THE COURT:**  All right.  So not E6 but E7 instead.

**THE CLERK:**  And then for the Government, I just want to verify, 54, I believe it was for ID only?  But was it granted to be admitted?

**THE COURT:**  I believe that it was for ID only when the interpreter testified.  But then when -- no, you're right. Let's see --

**MR. FAWCETT:** I -- I had also not marked it as being admitted, so that's my understanding as well. But --

**THE COURT:** Very well.

**MR. FAWCETT:** -- I could be wrong.

**THE COURT:** Okay. So 54 is not admitted.

**THE CLERK:** Perfect.

**THE COURT:** Okay.

All right. Make sure you all leave your numbers with Rhea. Anything else from me -- that you need from me?

**MR. GARRISON:** Your Honor, did you want to talk about the verdict form?

**THE COURT:** Oh, yes. Absolutely. Thank you so much for that.

What are the -- what are the requests?

**MR. GARRISON:** I reviewed the Government's verdict form, and there's just really two things that I want to raise. First, I think that the proper order should be "not guilty" and "guilty" since --

**THE COURT:** I always change that. So yes. Thank you for that.

**MR. GARRISON:** And then second of all, for Counts 2 and 3, I think -- or we don't have the lesser included offenses on the verdict form. And so my proposal would be that, you know, under each of those, there would be something that says, "Answer this only if you are not" -- "or you find not guilty on

Count 2."  And then it would just say "not guilty," "guilty of the offense of bringing in" --

THE COURT:  Yeah, I understand.  I think that's appropriate, particularly because we also gave the instruction.

So I'm going to ask the Government, can you redo this and send it to Defense Counsel and email it to us so that we can get it into the jurors?

MR. BESHAR:  Of course, Your Honor.

MR. FAWCETT:  Yes, Your Honor.

THE COURT:  All right.  Thank you.

MR. GARRISON:  Thank you, Your Honor.

THE CLERK:  The Court is now in recess.

(A recess was taken from 11:23 a.m. to 1:54 p.m.)

(Proceedings heard outside the presence of the jury.)

VERDICT

THE CLERK:  Please remain seated and come to order. This United States District Court for the Southern District of California is now in session.

THE COURT:  Good afternoon, everybody.

ALL:  Good afternoon, Your Honor.

THE CLERK:  We're now back on the record.

(Pause.)

(Jury entering the courtroom at 1:57 p.m.)

THE COURT:  Okay.  Welcome back, members of the jury. My understanding is you have a verdict.  Is that true?  Do we

have a foreperson?

FOREPERSON:  Yes.

THE COURT:  If you can please pass the verdict form to my clerk.  And everyone may be seated.  Thank you.

All right.  "We, the jury in the above entitled cause, find the defendant, Miguel Rolon, guilty of the offense of conspiracy to bring in certain aliens for financial gain, as alleged in Count 1;

"Guilty of the offense of bringing in Zulemy Yohana Raquec-Mucia for financial gain, as alleged in Count 2;

"Guilty of the offense of bringing Yonathan Moises Ixan-Marroquin for financial gain, as alleged in Count 3.

"Dated April 10, 2025," and signed by the foreperson.

Counsel, would you like the jury polled?

MR. BUGARIN:  Yes, Your Honor.

THE COURT:  All right.  Thank you.

Juror No. 1, is this your true verdict?

JUROR No. 1:  Yes.

THE COURT:  Juror No. 2?

JUROR No. 2:  Yes, Your Honor.

THE COURT:  Jury No. 3?

JUROR No. 3:  Yes.

THE COURT:  Juror No. 4, is this your true verdict?

JUROR No. 4:  Yes.

THE COURT:  Number 5?

*JUROR No. 5:*  Yes.

*THE COURT:*  Okay.  Number 6?

If you can say it out loud so we can get responses.

Thank you.

*JUROR No. 6:*  Yes.

*THE COURT:*  Juror No. 7?

*JUROR No. 7:*  Yes.

*THE COURT:*  Juror No. 8?

*JUROR No. 8:*  Yes.

*THE COURT:*  Juror No. 9?

*JUROR No. 9:*  Yes.

*THE COURT:*  Juror No. 10?

*JUROR No. 10:*  Yes.

*THE COURT:*  Juror No. 11?

*JUROR No. 11:*  Yes.

*THE COURT:*  And Juror No. 12?

*JUROR No. 12:*  Yes.

*THE COURT:*  All right.  I want to thank you all very much once again for your service.  Now that your work here is done, you are free to speak to anyone you wish about the case and share what your experiences were.

I hope on behalf of our court that we were able to make this experience as smooth for you with as little disruption in your personal lives as possible.

It is not uncommon for the lawyers to want to take a

SER-375

few minutes and speak to jurors once you are -- once you walk outside. That is typically just done as -- as a courtesy for the lawyers to learn what they, you know, could have done differently, what your experience was like. So you know, if you don't have any place to run off to, I encourage you to stick around in the hallway. I'm only going to take a couple of minutes with them.

It is -- you have no responsibility or obligation to do so. It's entirely up to you. But I do know that lawyers for both sides typically appreciate that courtesy. So for those of you who are not in hurry and wish to stick around, I'm sure the lawyers would appreciate it.

Once again, we thank you for your service.

Thank you very much.

**(Jury exits the courtroom at 2:00 p.m.)**

*THE COURT:* All right, Mr. Rolon. So --

You may be seated, everyone. Thank you.

At this time I am going to order a presentence report be prepared in your case. Your sentencing will take place...

*THE CLERK:* July 7th at 10:00 a.m.

*THE COURT:* July 7th at 10:00 a.m.

Mr. Garrison, would you like up until that date to file any post-trial motions, or are you seeking a different date? What is your request?

*MR. GARRISON:* Yes, Your Honor. Could we extend the

time of filing until the date of sentencing?

THE COURT:  Would you like it in anticipation of sentencing, or that same day?

MR. GARRISON:  Just that same day is fine.

THE COURT:  Perfect.

So any post-trial motions are due to be filed by July 7th, and the Government will have two weeks to respond. If anyone needs additional time, just reach out and let Rhea know, and I'll accommodate everyone's schedules.  So July 7th --

MR. GARRISON:  Well, Your Honor, I think we could -- if the Court wants to hear the motions on the 7th --

THE COURT:  That's what I was going to suggest. That's why I -- yeah.  That's -- let me set the deadline for any post-trial motions for June 16th and any oppositions by June 23rd.  And then on July 7th, we will have your sentencing hearing.  And we will -- if I need to hear any additional argument on the post-trial motions, I can do so at that time.

MR. BUGARIN:  Thank you, Your Honor.

THE COURT:  All right.  Thank you, everybody.

ALL:  Thank you, Your Honor.

THE COURT:  That's all for today.

THE CLERK:  The Court is now in recess.

(Proceedings adjourned at 2:03 p.m.)

* * * *

SER-377

United States v. Miguel Rolon
24-cr-0684-LL
Trial April 8, 2025
Government's Trial Exhibit List

| EXH No. | DESCRIPTION | WITNESS | OFFERED | ADMITTED |
|---|---|---|---|---|
| 1 | Yonathan ID Front and Back | | | |
| 2 | Zulemy ID Front and Back | | | |
| 3 | Joel Posadas Passport Card | | | |
| 4 | Gabriela Posadas Passport Card | | | |
| 5 | Black Phone Front and Back | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 6 | Yonathan Post Arrest Photo at Port | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 7 | Mel Contact | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 8 | Phone Messages with Hermana | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 9 | Phone Messages and Photo with Hermana | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 10 | Joel Passport Card from Hermana | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 11 | Hermana Contact | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 12 | WhatsApp Image of Defendant | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 13 | Photo in Car of Driver | | | |
| 14 | Photo Driving to Port | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 15 | Photo of San Ysidro Port | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 16 | Phone Calls with Zulmy | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 17 | Photos from Zulmy | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 18 | Messages with Gabriela's Information | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 19 | Yonathan Depo Letter | | | |
| 20 | Yonathan Subpeona | | | |
| 21 | Yonathan Parole Letter | | | |
| 22 | Blue Phone Front and Back | | | |
| 23 | WhatsApp Chats | | | |
| 24 | Mel Contact | | | |
| 25 | Phone Messages and Calls with Mel | | | |

SER-378

| EXH No. | DESCRIPTION | WITNESS | OFFERED | ADMITTED |
|---|---|---|---|---|
| 26 | Phone Messages with Maynor Sir | | | |
| 27 | Phone Calls with Mel | | | |
| 28 | Gabriela Posadas CA Driver's License | | | |
| 29 | Photo of Gabriela's Driver's License | | | |
| 30 | Zulemy Post Arrest Photo at Port | | | |
| 31 | Co-Defendant Photo with Suitcase | | | |
| 32 | Zulemy Depo Letter | | | |
| 33 | Zulemy Subpeona | | | |
| 34 | Zulemy Parole Letter | | | |
| 35 | Map of San Ysidro Port of Entry | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 36 | Aerial Photo of San Ysidro Port of Entry | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 37 | Defendant's Vehicle at Port of Entry | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 38 | Defendant's POE Video | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 39 | Defendant's Driver's License | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 40 | U.S. Passport Card for Ixan-Marroquin, Yonathan Moises | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 41 | U.S. Passport Card for Raquec-Mucia, Zulemy Yohana | Jessie Presas | 4/8/2025 | 4/8/2025 |
| 42 | Mexican Driver's License for Yonathan Moises Ixan Marroquin | Luis Perez | 4/8/2025 | 4/8/2025 |
| 43 | Mexican Driver's License for Zulemy Yohana Raquec Mucia | Luis Perez | 4/8/2025 | 4/8/2025 |
| 44 | Post-Arrest Photo of Yonathan Marroquin | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 45 | Post-Arrest Photo of Zulemy Mucia | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 46 | Defendant's Post-Arrest Photo | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 47 | Back of Defendant's Phone (with Case on) | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 48 | Vehicle's Border-Crossing History | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 49 | Defendant's Border-Crossing History | Julio Corrales | 4/9/2025 | 4/9/2025 |

SER-379

| EXH No. | DESCRIPTION | WITNESS | OFFERED | ADMITTED |
|---|---|---|---|---|
| 50 | Co-Defendant's Border-Crossing Records | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 51 | Outbound Photo of Honda Civic | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 52 | Co-Defendant with Zulemy's Suitcase Photo | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 53 | Defendant Post-Arrest Interview_Video | | | |
| 54 | Translated Messages Exhibit 1 | Andreea Boscor | 4/8/2025 | N/A |
| 55 | Translated Messages Exhibit 8 | Andreea & Yonathan | 4/8/2025 | 4/9/2025 |
| 56 | Translated Messages Exhibit 9 | Andreea & Yonathan | 4/8/2025 | 4/9/2025 |
| 57 | Translated Messages Exhibit 10 | Andreea & Yonathan | 4/8/2025 | 4/9/2025 |
| 58 | Translated Messages Exhibit 11 | Andreea & Yonathan | 4/8/2025 | 4/9/2025 |
| 59 | Translated Messages Exhibit 18 | Andreea Boscor | 4/8/2025 | 4/9/2025 |
| 60 | Translated Messages Exhibit 23 | Andreea Boscor | 4/8/2025 | N/A |
| 61 | Translated Messages Exhibit 24 | Andreea Boscor | 4/8/2025 | N/A |
| 62 | Translated Messages Exhibit 25 | Andreea Boscor | 4/8/2025 | N/A |
| 63 | Translated Messages Exhibit 26 | Andreea Boscor | 4/8/2025 | N/A |
| 64 | Translated Messages Exhibit 27 | Andreea Boscor | 4/8/2025 | N/A |
| 65 | Video to Port of Entry | Ruth Smith & Yonathan Ixan | 4/8/2025 | 4/9/2025 |
| 66 | Transcript of Video to Port | Yonathan Ixan | 4/9/2025 | 4/9/2025 |
| 67 | Material Witness Deposition Video of Yonathan | | | |
| 68 | Material Witness Deposition Video of Zulemy | | | |
| 69 | Post Arrest Clips All | Julio Corrales | 4/9/2025 | 4/9/2025 |
| 70 | Jail Call with Unknown Male | Alexander Medina | 4/9/2025 | 4/9/2025 |
| 71 | Jail Call with Wife | | | |
| | | | | |

SER-380



AO386-C

**GOVERNMENT EXHIBIT**

CASE NO. 24CR684

EXHIBIT NO. 5

**SER-381**



**SER-382**

AO386-C

**GOVERNMENT EXHIBIT**

CASE NO. 24CR681

EXHIBIT NO. 6



SER-383



SER-384

GOVERNMENT
EXHIBIT



GOVERNMENT EXHIBIT 9



GOVERNMENT EXHIBIT

10

PENGAD 800-631-6989

SER-386



GOVERNMENT
EXHIBIT
11-A

SER-387



SER-388



SER-389



**SER-390**

GOVERNMENT EXHIBIT

15



GOVERNMENT
EXHIBIT
16

SER-391



GOVERNMENT
EXHIBIT
17

ENGAD 800-631-6989

**SER-392**



GOVERNMENT EXHIBIT

ENGAD 800-631-6989

SER-393



SER-394



SER-395







ESTADOS UNIDOS MEXICANOS
GOBIERNO DEL ESTADO DE GUERRERO
DIRECCIÓN GENERAL DE TRÁNSITO
LICENCIA PARA CONDUCIR

TRANSFORMANDO
GUERRERO

**NOMBRE**
YONATHAN MOISES IXAN
MARROQUIN
**CURP/RFC**
IAMY040916HDFXRNA6
**NACIONALIDAD**
MEXICANA
**DONADOR DE ORGANOS**
NO

**FOLIO: EA2900**

**EXPEDICIÓN**
FEBRERO 19, 2024

**VENCIMIENTO**
FEBRERO 19, 2029

**TIPO**
**A**

**AUTOMOVILISTA**

JUCHITÁN

**DOMICILIO**
MORELOS #424, CENTRO, JUCHITAN, GUERRERO

**NOMBRE Y No. EMERGENCIA**
ROSA MARROQUIN CHÁVEZ / 5520176389

**ALERGIAS / TIPO DE SANGRE**
NINGUNA / A+

VERIFICAR LICENCIA EN:
www.direcciontransitojuchitan.gob.mx

VÁLIDA A NIVEL NACIONAL

USA CINTURÓN
DE SEGURIDAD

**FIRMA DEL TITULAR**

CMTE. SABAS GARCÍA PRUDENTE
DIRECTOR DE TRANSITO MUNICIPAL

**911**
EMERGENCIAS

**SER-399**

**ESTADOS UNIDOS MEXICANOS**
DIRECCIÓN GENERAL DE TRANSITO
LICENCIA PARA CONDUCIR

TRANSFORMANDO **GUERRERO**

**NOMBRE**
ZULEMY YOHANA RAQUEC MUCIA

**CURP/RFC**
RQMNYOZ990307MSNOAA9

**NACIONALIDAD**
MEXICANA

**DONADOR DE ORGANOS**
NO

**TIPO**
**A**

FOLIO: EA2875

**EXPEDICIÓN**
FEBRERO 19, 2024

**VENCIMIENTO**
FEBRERO 19, 2029

**AUTOMOVILISTA**

JUCHITÁN

**DOMICILIO**
MORELOS #424, CENTRO, JUCHITÁN, GUERRERO

**NOMBRE Y No. EMERGENCIA**
JUAN CARLOS PERALTA ANGELES / 5588273356

**ALERGIAS / TIPO DE SANGRE**
NINGUNA / A+

VÁLIDA A NIVEL NACIONAL

VERIFICAR LICENCIA EN:
www.direcciontransitojuchitan.gob.mx

USA CINTURÓN
DE SEGURIDAD

**FIRMA DEL TITULAR**

CMTE. SABAS GARCÍA PRUDENTE
DIRECTOR DE TRANSITO MUNICIPAL

**911**
EMERGENCIAS

**SER-400**



SER-401

000146

SER-402

000119

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 105 of 122

SER-403





**SER-404**



| Query Criteria | | | | | | |
|---|---|---|---|---|---|---|
| TECS Record ID: | | | | | | |
| License Plate: | | License Year: | | License Country: | | License State: |
| VIN: | | NICB Notification: | N | Vehicle Model Year: | | Vehicle Make: |
| Case Number: | | Misc Number: | | Criminal Affiliation: | | Sub-Records: | Y |
| Archived Records: | Y | Encounter History: | Y | Trusted Traveler: Y | | NCIC QW: | Y |
| Non Suspects: | Y | NLETS States: | Y | ASA: | | Licence Type | PC |
| NLETS State(1): | CA | NLETS State(2): | | NLETS State(3): | | NLETS State(4): |

| License Number | License State | License Country | Date | Time | I/O | Site | Lane | VIN | Pkg ID | Pkg Result | # Passengers | Rslt | Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8TNE791 | CA | USA | 03/11/2024 | 08:26 | I | L255 | 27A | 2HGES16554H616224 | 5667655534 | R | 3 | N-NOT | |
| 8TNE791 | CA | USA | 03/11/2024 | 03:37 | O | L25H | W5 | | 6270375231 | E-EXPIRED | Unknown | N-NOT | |

No Items selected.Total Number of Records: 2

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 107 of 122

SER-405



# U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## Person Query - Encounter History Hit List

03/13/2025 15:23 PM EDT                    Generated By: JULIO CORRALES                    Page 1 of 1

| Query Criteria | | | |
|---|---|---|---|
| TECS Record ID: | | | |
| Last Name: Rolon | First Name: migeal | Middle Name: | NCIC QW: Y |
| Nickname: N | Soundex: Y | Dob (Start): 10/31/1986 | Dob (End): |
| SSN: | STC: | Doc #: | Doc Type: A |
| Cntry of Issuance: | State/Prov: | Alien #: | Alien Rcpt #: |
| Misc #: | Misc Type: | Pilot Lic #: | Pilot Country: |
| Criminal Affiliation: | Case #: | Phone Type: | InterNtl Prefix: |
| Phone #: | Alt Comm: | Alt Comm Type: | Fin Account: |
| ATF Profile: | Sub-Records: Y | Non Suspects: Y | Archived Records: Y |
| Encounter History: Y | Trusted Traveler: Y | Incident Logs: Y | Secondary Inspections: Y |
| Electronic Media: N | Trusted Traveler: Y | NLETS States: Y | NLETS State(1): |
| NLETS State(2): | NLETS State(3): | NLETS State(4): | NLETS State(5): |
| CMIR: N | Race: | Sex: M | Citizenship: USA |
| OTTS Type: | Address Country: | State/Prov: | ASA: |
| Record Control #: | | | |

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROLON | MIGEAL | 10/31/1986 | 03/11/2024 | 08:26 | | | I | L255 | GONZALEZ PRESAS, JESSE | VEHICLE | | CUSTOMS | R |
| ROLON | MIGEAL | 10/31/1986 | 03/10/2024 | 03:04 | | | I | L25C | LAWRENCE, MUSTAFA | PEDESTRIAN | | NOT REFERRED | N |
| ROLON | MIGEAL | 10/31/1986 | 03/09/2024 | 05:11 | | | I | L255 | LOPEZ, PAOLOFRANCESCO | VEHICLE | | CUSTOMS | F |
| ROLON | MIGEAL | 10/31/1986 | 05/17/2022 | 02:37 | | | I | L255 | VELEZ, RAUL | VEHICLE | | CUSTOMS | R |
| ROLON | MIGEAL | 10/31/1986 | 05/11/2022 | 23:40 | | | I | L255 | MORALES, JUAN | VEHICLE(DCL) | | NOT REFERRED | R |

No Items selected.Total Number of Records: 5

# SER-406
**For Official Use Only / Law Enforcement Sensitive**



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT                    Generated By: JULIO CORRALES                    Page 1 of 12

| Query Criteria | | | | | | | |
|---|---|---|---|---|---|---|---|
| TECS Record ID: | | | | | | | |
| Last Name: | POSADAS | First Name: | Melquides | Middle Name: | P | NCIC QW: | Y |
| Nickname: | Y | Soundex: | Y | Dob (Start): | 12/01/1977 | Dob (End): | |
| SSN: | | STC: | | Doc #: | | Doc Type: | A |
| Cntry of Issuance: | | State/Prov: | | Alien #: | | Alien Rcpt #: | |
| Misc #: | | Misc Type: | | Pilot Lic #: | | Pilot Country: | |
| Criminal Affiliation: | | Case #: | | Phone Type: | | InterNtl Prefix: | |
| Phone #: | | Alt Comm: | | Alt Comm Type: | | Fin Account: | |
| ATF Profile: | | Sub-Records: | Y | Non Suspects: | Y | Archived Records: | Y |
| Encounter History: | Y | Trusted Traveler: | Y | Incident Logs: | Y | Secondary Inspections: | Y |
| Electronic Media: | N | Trusted Traveler: | Y | NLETS States: | Y | NLETS State(1): | |
| NLETS State(2): | | NLETS State(3): | | NLETS State(4): | | NLETS State(5): | |
| CMIR: | N | Race: | | Gender: | | Citizenship: | |
| OTTS Type: | | Address Country: | | State/Prov: | | ASA: | |
| Record Control #: | | | | | | | |

SER-407

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 109 of 122

000029



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT

Generated By: JULIO CORRALES

Page 2 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/06/2024 | 10:57 | | | I | L25 C | MCCLEARY, RUDY | PEDESTRIAN | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/11/2024 | 10:44 | | | I | L25 C | JONES, CECIL | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/10/2024 | 03:05 | | | I | L25 C | MIRANDA, MAX | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/09/2024 | 05:11 | | | I | L25 5 | LOPEZ, PAOLOFRANCESCO | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/05/2024 | 05:38 | | | I | L25 5 | SANTOYO JR, JOSE | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/02/2024 | 01:12 | | | I | L25 5 | LAGUNA STOUTE, JOSEPH | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/28/2024 | 00:05 | | | I | L25 5 | NEVAREZ-MEJIA, EZEQUIEL | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/24/2024 | 02:52 | | | I | L25 5 | ARRINGTON, JAWON | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/17/2024 | 02:18 | | | I | L25 5 | CHAVEZ, JULIO | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/25/2024 | 00:13 | | | I | L25 C | LILES, JAMES | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/16/2024 | 04:00 | | | I | L25 C | PARRA, MARCOS | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/13/2024 | 18:25 | | | I | L25 D | DALUZ, DARIUS | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 12/09/2023 | 00:59 | | | I | L25 5 | RUBIO, CARLOS | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/30/2023 | 06:52 | | | I | L25 5 | JANGIR, HELAN | VEHICLE | | CUSTOMS | T |

SER-408

000030

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 110 of 122

**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT          Generated By: JULIO CORRALES          Page 3 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/18/2023 | 00:11 | | | I | L25 5 | FELICIANO, JASON | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/11/2023 | 03:34 | | | I | L25 5 | MOHAIMANY-APONTE, PEYVAND | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/11/2023 | 01:45 | | | I | L25 5 | MARMOLEJO, EDUARDO | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/06/2023 | 22:18 | | | I | L25 5 | VALENCIA, DIEGO | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/05/2023 | 04:24 | | | I | L25 5 | ZHANG, XIAOKANG | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 10/10/2023 | 07:01 | | | I | L25 5 | POUNCY, SAMUEL | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 10/10/2023 | 04:47 | | | I | L25 4 | GASTINEAU, BRIAN | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/28/2023 | 04:07 | | | I | L25 C | WALATEE, ANSTON | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/27/2023 | 05:35 | | | I | L25 4 | BENTO, TRENELL | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/08/2023 | 02:19 | | | I | L25 4 | BRENT, BRIAN | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/08/2023 | 00:49 | | | I | L25 5 | NINO, MAHER | VEHICLE | | CUSTOMS | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/31/2023 | 05:14 | | | I | L25 5 | RODRIGUEZ-CUELLAR, JORGE | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/29/2023 | 03:38 | | | I | L25 5 | ROBINSON, JAHNEL | VEHICLE | | NOT REFERRED | N |

SER-409

000031

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 111 of 122



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT

Generated By: JULIO CORRALES

Page 4 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/22/2023 | 05:37 | | | I | L25 4 | DE LEON, REGGIE | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/11/2023 | 00:51 | | | I | L25 5 | ALEXAN DER, DEMETO USE | VEHICLE | | CUSTOMS | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/08/2023 | 00:06 | | | I | L25 5 | BANKS, JAUDAL E | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/12/2023 | 21:55 | | | I | L25 5 | HU, DAVID | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/10/2023 | 10:29 | | | I | L25 C | MUNGUI A, MICHAE L | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/13/2023 | 17:51 | | | I | L25 5 | WELLS, PEYTON | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/12/2023 | 07:32 | | | I | L25 5 | BEATY, BRANDO N | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/05/2023 | 04:19 | | | I | L25 5 | MEADOR , DAKOTA | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/30/2023 | 04:46 | | | I | L25 5 | SICKAU , FREDER ICK | VEHICLE | | CUSTOMS | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/24/2023 | 20:26 | | | I | L25 5 | PANUEL OS, SOFIA | VEHICLE | | CUSTOMS | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/22/2023 | 04:08 | | | I | L25 5 | LEVI, KORY | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/19/2023 | 01:02 | | | I | L25 5 | SMOUTH ERS, MICHAE L | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/18/2023 | 02:45 | | | I | L25 5 | RODRIG UEZ RAMIRE Z, CRISTI AN | VEHICLE | | CUSTOMS | R |

SER-410

000032

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 112 of 122



U.S. Customs and Border Protection
U.S. Department of Homeland Security
Person Query - Encounter History Hit List

Generated By: JULIO CORRALES

05/06/2024 18:20 PM EDT

Page 5 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/09/2023 | 07:24 | | | I | L25 C | ACEVES, JOSE | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/04/2023 | 10:44 | | | I | L25 4 | GAETA, FRANCISCO | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/24/2023 | 10:15 | | | I | L25 C | BALLESTEROS, JEAN | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/24/2023 | 06:57 | | | I | L25 C | SAFFOMILLA, WESLEY | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/06/2023 | 02:13 | | | I | L25 4 | JOHNSON, ARIAN | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/19/2023 | 07:46 | | | I | L25 C | BURTON, ALIA | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/16/2023 | 02:26 | | | I | L25 C | AGUIAR, JORGE | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/11/2023 | 19:49 | | | I | L25 4 | TARANTINO, GIOVAN | PEDESTRIAN | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/11/2023 | 10:13 | | | I | L25 5 | ALMAGUER-ANGULO, MARCOS | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/07/2023 | 07:19 | | | I | L25 5 | LOMELI CUEVAS, ITZE | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/26/2023 | 03:06 | | | I | L25 5 | COLEMAN, JOSHUA | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/13/2023 | 02:50 | | | I | L25 5 | MILLER, CASSI | VEHICLE | | CUSTOMS | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/12/2023 | 04:37 | | | I | L25 C | DIAZ, LEONARDO | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/09/2023 | 22:47 | | | I | L25 5 | WHITE, DARRELL | VEHICLE | | NOT REFERRED | N |

For Official Use Only / Law Enforcement Sensitive

**SER-411**

000033



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT

Generated By: JULIO CORRALES

Page 6 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/06/2023 | 06:06 | | | I | L255 | MILLER, CASSI | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/29/2023 | 21:05 | | | I | L255 | HIROME RIDES, NATHAN | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/28/2023 | 04:19 | | | I | L255 | BENNETT, NATHANIEL | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/22/2023 | 21:23 | | | I | L255 | WHANG, JAMES | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/16/2023 | 05:06 | | | I | L255 | PRIETO-SOTO, HECTOR | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/14/2023 | 20:45 | | | I | L255 | RIVERA, ZAMIRA | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/11/2023 | 20:03 | | | I | L255 | MORALES, JOSEARMOND | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/02/2023 | 03:38 | | | I | L255 | SMITH, CAMERON | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 12/31/2022 | 06:50 | | | I | L255 | BOTELLO SANCHEZ, VERONICA | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 12/22/2022 | 06:50 | | | I | L255 | RIOS POLL, BIANCA | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 12/19/2022 | 05:45 | | | I | L255 | SERNA, JAMIL | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 12/12/2022 | 19:05 | | | I | L255 | ORTEGA, JOSEPH | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/18/2022 | 00:16 | | | I | L255 | PRIETO, LEONARDO | VEHICLE | | NOT REFERRED | N |

SER-412

000034

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 114 of 122

**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT      Generated By: JULIO CORRALES      Page 7 of 12

SER-413

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 115 of 122

000035

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/10/2022 | 00:23 | | | I | L255 | SANDOVAL, ANDREW | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 10/17/2022 | 19:51 | | | I | L255 | GARCIA PADILLA, GERARDO | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 10/06/2022 | 21:37 | | | I | L255 | SCHEERHORN, ANDREW | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/30/2022 | 20:46 | | | I | L255 | MARTINEZ, JOSE | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/26/2022 | 21:18 | | | I | L255 | ARRIAGA, CARLOS | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/23/2022 | 02:33 | | | I | L255 | VIRDEN, RICHARD | VEHICLE | | AGRICULTURE | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/06/2022 | 06:43 | | | I | L254 | REHMANI, USMAN | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/23/2022 | 01:36 | | | I | L254 | OLAGUE, RICARDO | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/08/2022 | 01:05 | | | I | L255 | ROSARIO RODRIGUEZ, JOY | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/17/2022 | 18:33 | | | I | L255 | RONQUILLO, ROMMEL | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/16/2022 | 16:41 | | | I | L255 | AXBERG, JARED | VEHICLE | | CUSTOMS | R |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/13/2022 | 07:11 | | | I | L255 | AYALA-SAGUN, RAUL | VEHICLE | | NOT REFERRED | N |

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/08/2022 | 05:21 | | | I | L255 | FERGUSON , CURTIS | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/08/2022 | 05:21 | | | I | L255 | FERGUSON , CURTIS | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/30/2022 | 02:15 | | | I | L255 | KIM, DEAN | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/30/2022 | 02:11 | | | I | L255 | KIM, DEAN | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/24/2022 | 03:56 | | | I | L255 | QUASHIE, GLASTON | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/16/2022 | 06:04 | | | I | L254 | PEREZ, DAISY | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/09/2022 | 05:39 | | | I | L255 | NGUYEN , MICHAEL | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/24/2022 | 05:16 | | | I | L255 | OKUR, MUSTAFA | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/12/2022 | 18:44 | | | I | L255 | ARIAS, JESUS | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/03/2022 | 23:32 | | | I | L255 | HERRON , DAVID | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/03/2022 | 23:32 | | | I | L255 | HERRON , DAVID | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/25/2022 | 02:12 | | | I | L255 | SLAYTON, CHRISTOPHER | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/10/2022 | 12:58 | | | I | L255 | MURILLO, DANIEL | VEHICLE | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/10/2022 | 07:46 | | | I | L25C | RENTERIA, JASON | PEDESTRIAN | | NOT REFERRED | N |

SER-414

000036

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 116 of 122



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT

Generated By: JULIO CORRALES

Page 9 of 12

SER-415

000037

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 117 of 122

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/01/2022 | 18:03 | | | I | L25 C | GASKINS, GLENN | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 11/25/2021 | 02:57 | | | I | L25 C | ZARATAN, PAUL | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/12/2021 | 05:12 | | | I | L25 C | RAMOS, ALEXANDER | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/12/2021 | 05:12 | | | I | L25 C | RAMOS, ALEXANDER | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/29/2021 | 17:12 | | | I | L25 C | JESSEN, TROY | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/25/2020 | 18:59 | | | I | L25 C | MIRANDA, YADIRA | PEDESTRIAN | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/21/2020 | 17:25 | | | I | L25 D | SANJOSE, CRISPIN | PEDESTRIAN | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/17/2020 | 18:40 | | | I | L25 C | HERNANDEZ, MOISES | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/30/2020 | 03:09 | | | I | L25 5 | PEREZ, JAIME | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/29/2020 | 15:53 | | | I | L25 5 | MORA, ANTONIO | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/23/2020 | 16:24 | | | I | L25 4 | SANTANA, ALMA | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/20/2020 | 17:42 | | | I | L25 5 | HICKS, CRYSTAL | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/15/2020 | 18:09 | | | I | L25 4 | VALENCIA, JOSE | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/03/2020 | 07:48 | | | I | L25 5 | TORRES, RONALD | VEHICLE | | CUSTOMS | T |



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT                    Generated By: JULIO CORRALES                    Page 10 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/29/2020 | 18:47 | | | I | L25 C | BYERS, LINDSEY | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/28/2020 | 21:51 | | | I | L25 4 | CHAPMAN, JOSHUA | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/20/2020 | 20:23 | | | I | L25 5 | ALBERTI, JESUS | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/16/2020 | 18:25 | | | I | L25 4 | MACIAS, JESSICA | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/11/2020 | 07:26 | | | I | L25 5 | ANDERSON, NATHAN | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 12/16/2017 | 23:07 | | | I | L25 4 | TAYLOR, BRIAN | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 10/05/2017 | 19:27 | | | I | L25 5 | CARRILLO, EFRAIN | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/21/2017 | 18:47 | | | I | L25 C | MORTON, DOUGLAS | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/16/2017 | 00:48 | | | I | L25 4 | SANCHEZ ROBELO, JULISA | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 08/18/2017 | 04:19 | | | I | L25 5 | MOREY, VERONICA | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/19/2017 | 11:43 | | | I | L25 2 | SANCHEZ, OSCAR | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/15/2017 | 18:31 | | | I | L25 4 | SIZEMORE, LEN | PEDESTRIAN | | INS | T |

**For Official Use Only / Law Enforcement Sensitive**

SER-416

000038

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 118 of 122

**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT

Generated By: JULIO CORRALES

Page 11 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 07/01/2017 | 20:36 | | | I | L254 | OHNMEISS, CHRISTOPHER | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 06/22/2017 | 20:59 | | | I | L254 | KASHOUTY, GARY | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 05/11/2017 | 18:23 | | | I | L255 | MORTON, DOUGLAS | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/12/2017 | 15:06 | | | I | L254 | GARCIA, GUSTAVO | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/12/2017 | 15:05 | | | I | L254 | ANOFF, JUSTIN | PEDESTRIAN | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 04/03/2017 | 22:09 | | | I | L254 | MATIAUDE, LUIS | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 03/02/2017 | 15:32 | | | I | L254 | ANGCAYA, JOMAR | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/09/2017 | 04:28 | | | I | L255 | AMAYA, HECTOR | VEHICLE | | CUSTOMS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/09/2017 | 01:27 | | | I | L254 | HARVEY, JENNIFER | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 02/08/2017 | 01:16 | | | I | L254 | OLAGUE, RICARDO | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/15/2017 | 17:14 | | | I | L254 | MIRANDA, YADIRA | VEHICLE | | NOT REFERRED | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/05/2017 | 20:40 | | | I | L255 | JOHNSON, TYREAK | VEHICLE | | INS | T |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/01/2017 | 23:35 | | | I | L254 | SCHIDLMEIER, JOHN | VEHICLE | | NOT REFERRED | T |

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 119 of 122

SER-417

000039



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**Person Query - Encounter History Hit List**

05/06/2024 18:20 PM EDT          Generated By: JULIO CORRALES          Page 12 of 12

| Last Name | First Name | DOB | Encounter Date | Encounter Time | Carrier Code | Carrier # | I/O | Site | Inspector | Type | Status | Ref | Hit Ind |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 01/06/2014 | 04:38 | | | I | L25 4 | FLORES, OSCAR | PEDESTRIAN | | NOT REFERRED | N |
| POSADAS | MELQUIDES | 12/01/1977 | 10/18/2012 | 00:00 | AS | 248 | O | | Name No Name, No | APIS | N - NOT ON BOARD | NOT REFERRED | N |
| POSADAS | MELQUIDES PALAFOX | 12/01/1977 | 09/19/2012 | 20:14 | | | I | L25 C | JOHN DELA CRUZ, CHRISTOPHER | PEDESTRIAN | | NOT REFERRED | N |

No Items selected.Total Number of Records: 135

SER-418

000040

Case: 25-4322, 05/04/2026, DktEntry: 23.3, Page 120 of 122



SER-419



SER-420

000160